**LITTLER MENDELSON, P.C.**
885 Third Avenue, 16th Floor
New York, New York  10022-4834
212.583.9600

Counsel for Defendant
ECOLAB INC.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

CIVIL ACTION NO. 07-8623 (DLC)

MICHAEL CLARK, DAVID STARKMAN,
FRANCO DESIMONE, and JOHN DINISI,
individually and on behalf of all other similarly
situated employees,

        Plaintiffs,

v.

ECOLAB, INC.,

        Defendant.
_____/

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO TRANSFER VENUE AND CONSOLIDATE
CERTAIN PLAINTIFFS WITH FIRST FILED ACTION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................1

STATEMENT OF RELEVANT FACTS.............................................................................3

I.    THE PARTIES TO THIS LITIGATION .......................................................................3

    A.    Ecolab's and Kay's Operating Divisions at Issue in this Litigation ......................3

    B.    The Named Plaintiffs .............................................................................................4

II.    THE FIRST AMENDED COMPLAINT IN *CLARK*, AND ITS RELATIONSHIP
TO PREVIOUSLY FILED LITIGATION IN THIS JUDICIAL DISTRICT ...................4

    A.    The Initial Complaint in *Clark*.............................................................................4

    B.    Plaintiff Clark Amends His Pleadings, Adding Additional Named Plaintiffs ........5

    C.    Plaintiffs' Counsel's Previously Filed Case Now Pending in the Southern
District of New York Before Judge Crotty............................................................6

III.    THE RELEVANT EVIDENCE PERTAINING TO THE KAY PLAINTIFFS'
CLAIMS IS LOCATED IN NORTH CAROLINA ........................................................7

    A.    The Key Evidence, Witnesses, and Documentary Evidence is Located in
Greensboro, North Carolina, at Kay Corporate Headquarters................................7

    B.    Key Witnesses Reside in the Middle District of North Carolina or Closer to
that Venue than the Southern District of New York..............................................7

LEGAL ARGUMENT ........................................................................................................10

I.    ALL RELEVANT FACTORS SUPPORT TRANSFER OF THE KAY
PLAINTIFFS' CLAIMS TO NORTH CAROLINA......................................................10

    A.    The Statutory Standard Governing Motions to Transfer Venue............................10

    B.    The Kay Plaintiffs Plainly Could Have Filed this Action in the Middle
District of North Carolina.....................................................................................11

    C.    The Convenience of the Parties and Interests of Justice Weigh Heavily in
Favor of Transfer of the Kay Plaintiffs' Claims to the Middle District of
North Carolina .....................................................................................................11

        1.    The Relevant Factors ................................................................................11

        2.    The Kay Plaintiffs' Choice of Forum is Entitled to Little Weight............12

# TABLE OF CONTENTS
**(continued)**

**Page**

    3.    Transfer to the Middle District of North Carolina Will Serve the Convenience of the Parties and Witnesses ...............................................13

    4.    Ease of Access to Sources of Proof Favors Transfer ................................14

    5.    The Federal Court in the Middle District of North Carolina is Fully Competent to Interpret and Apply Various Wage and Hour Laws ...........15

    6.    The Middle District of North Carolina Has a Less Crowded Docket .......16

    7.    This District Does Not Maintain a Greater Local Interest in the Controversy ................................................................................................16

II.    THE COURT SHOULD TRANSFER THE REMAINING INSTITUTIONAL PLAINTIFFS, STARKMAN AND DINISI, INTO THE *MASSON* LITIGATION BASED ON THE "FIRST FILED" RULE ...................................................................16

    A.    The "First Filed" Rule Applies to Protect Judicial Economy and Guard Against Inconsistent Judgments ...........................................................................16

    B.    The Issues in *Masson* Are Substantially Similar to the Issues Raised by the Institutional Plaintiffs .......................................................................................17

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*,
  860 F. Supp. 128 (S.D.N.Y. 1994) ................................................................. 18, 19

*Age Group v. Regal Logistics, Corp.*,
  Case No. 06-4328, 2007 U.S. Dist. LEXIS 62476 (S.D.N.Y.) ............................. 14

*Alltrade, Inc. v. Uniweld Products, Inc.*,
  946 F.2d 622 (9th Cir. 1991) ............................................................................ 18

*Berman v. Informix Corp.*,
  30 F. Supp.2d 653 (S.D.N.Y. 1998) ................................................................... 13

*Butcher v. Gerber Prods. Co.*,
  Case No. 98-1819, 1998 U.S. Dist. LEXIS 11869 (S.D.N.Y.) .................................. 14, 15, 16

*Connors v. Lexington Ins. Co.*,
  666 F. Supp. 434 (E.D.N.Y. 1987) ..................................................................... 13

*Curtis v. Citibank, N.A.*,
  226 F.3d 133 (2nd Cir. 2000) ............................................................................ 19

*Earley v. BJ's Wholesale Club, Inc.*,
  Case No. 06-3529, 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y.) ....................................... 13, 16

*Evancho v. Sanofi-Aventis U.S., Inc.*,
  Case No. C 07-00098 SI, 2007 WL 1302985 (N.D. Cal.) ............................... 14, 15

*Everest Capital Ltd. v. Everest Funds Mgmt, LLC*,
  178 F. Supp.2d 459 (S.D.N.Y. 2002) ................................................................. 17

*Foster v. Nationwide Mutual Ins. Co.*,
  Case No. 3:07-cv-04928 (N.D. Cal.) ........................................................... 15, 16

*Freeman v. Hoffmann-LaRoche, Inc.*,
  Case No. 06-13497, 2007 U.S. Dist. LEXIS 23132 (S.D.N.Y.) ....................... 12, 14

*General Trading Co. v. Ja-Ru, Inc.*,
  41 F. Supp.2d 421 (S.D.N.Y. 1998) ............................................................. 18, 19

*In re Collins & Aikman Corp. Securities Litigation*,
  438 F. Supp.2d 392 (S.D.N.Y. 2006) ................................................................. 11

*In re Funeral Consumers Antitrust Litigation*,
  Case No. C 05-01804 WHA, *et al.*, 2005 WL 2334362 (N.D. Cal. 2005) ............... 16

*Jumapao v. Washington Mutual Bank, N.A.*,
  Case No. 06-2285, 2007 U.S. Dist. LEXIS 88216 (S.D. Cal.) ....................... 18, 19

*Kidd v. Andrews*,
  340 F. Supp.2d 333 (W.D.N.Y. 2004) ................................................................ 18

*Manufacturers Hanover Trust Co. v. Palmer Corp.*,
  798 F. Supp. 161 (S.D.N.Y. 1992) ..................................................................... 18

—

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*O'Hopp v. ContiFinancial Corp.*,
   88 F. Supp.2d 31 (E.D.N.Y. 2000)................................................................................12, 13

*Pacesetter Systems, Inc. v. Medtronic. Inc.*,
   678 F.2d 93 (9th Cir. 1982) ...............................................................................................18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ...........................................................................................................11

*Ramos de Almeida v. Powell*,
   Case No. 01-V-11630, 90 FEP Cases (BNA) 1235 (S.D.N.Y. 2002)..............................13, 15

**STATUTES**

28 U.S.C. § 1391(c)......................................................................................................................12

28 U.S.C. § 1404(a)......................................................................................2, 11, 12, 13, 15, 17, 19

**RULES**

Fed. R. Civ. P. 23 ...........................................................................................................................5

## **INTRODUCTION**

Defendant Ecolab Inc., pursuant to 28 U.S.C. § 1404(a), moves this Court to transfer the claims of Plaintiff Michael Clark and Plaintiff Franco Desimone (the "Kay Plaintiffs") to the United States District Court for the Middle District of North Carolina, located in Greensboro, North Carolina.  Transfer under Section 1404 is warranted based on the convenience of witnesses, the parties, and in the interests of justice.

In addition, Ecolab requests that this Court consolidate the claims of Plaintiff David Starkman and Plaintiff John Dinisi (the "Institutional Plaintiffs") with the claims now pending in the Southern District of New York in a case entitled *Masson v. Ecolab, Inc.*, Case No. 1:04-cv-4488, before the Honorable Paul A. Crotty.  Such consolidation is appropriate based on the "first filed" rule because the Institutional Plaintiffs have alleged claims that are substantially similar to the claims asserted against Ecolab on behalf of a collective class of individuals conditionally certified in *Masson*.

This wage and hour lawsuit is one of three such cases now pending in this judicial district brought by the same counsel against Ecolab.  Although this case was initially filed on behalf of one plaintiff, Michael Clark, Plaintiff Clark has now amended his pleadings and added three additional named plaintiffs.  These four individuals worked for two separate companies (1) the Institutional division of Ecolab Inc.; and (2) Kay Chemical Company ("Kay"), a North Carolina corporation headquartered in Greensboro, North Carolina, a separately incorporated Ecolab subsidiary.  The original plaintiff, Clark, is currently employed as a "Territory Representative" for Kay.  Clark lives and works exclusively in California.  Like Clark, Plaintiff Franco Desimone is a former Kay employee who was employed as a "Senior Territory Representative" in Washington, Oregon, and California until November 16, 2007.

The Kay Plaintiffs' wage and hour claims, which are necessarily focused on their job duties and their compensation, have nothing to do with this judicial district. All relevant evidence concerning how, where, and why they performed the primary duties associated with their jobs will be found outside this district, and such evidence, either through witness testimony or documentary evidence, will be primarily focused at Kay's corporate headquarters in Greensboro, North Carolina. The Court should therefore transfer these Kay Plaintiffs' claims to the Middle District of North Carolina, for the convenience of the parties and in the interest of justice. That venue: (1) is closer to the relevant witnesses and evidence in this case; (2) is closer to Kay's headquarters; (3) is equally familiar with relevant wage and hour laws; (4) has a less crowded docket; and (5) has a greater local interest in the action. Indeed, the Kay Plaintiffs' claims have no connection to New York whatsoever. The Kay Plaintiffs' *attorneys* appear to reside in the State of New York – but that is the only fact that could conceivably make this District convenient in this litigation. The Kay Plaintiffs' "choice of forum," based upon these undisputable facts, smacks of forum shopping and is entitled to no weight.

Plaintiffs John Dinisi and David Starkman (the "Institutional Plaintiffs"), whose claims have also been added by Plaintiff Clark to the First Amended Complaint, were employed in Ecolab's "Institutional" division as Route Managers. Dinisi worked and lives in New York, Starkman in California. Another wage and hour case involving Institutional Route Managers, *Masson v. Ecolab, Inc.*, Case No. 04-cv-4488, is currently pending in this District before Judge Crotty. The Court has already conditionally certified a collective class which may reasonably encompass Starkman's and Dinisi's claims to the extent that both former employees are also challenging their status as exempt Institutional Route Managers. Based on the "first filed" rule and the principles animating that judicial doctrine, this Court should transfer the Institutional Plaintiffs' claims into the first-filed *Masson* case. There is a substantial risk of inconsistent

judgments, not to mention the inefficient waste of litigation resources and costs, if the Institutional Plaintiffs are allowed to pursue the same or substantially similar claims in this Court that their counsel is also litigating on behalf of purportedly "similarly situated" claimants in *Masson*.

## STATEMENT OF RELEVANT FACTS

### I.    THE PARTIES TO THIS LITIGATION.

#### A.    Ecolab's and Kay's Operating Divisions at Issue in this Litigation.

Ecolab Inc. ("Ecolab"), headquartered in St. Paul, Minnesota, is divided into ten different business units, each with its own unique focus. (Declaration of Nancy Hayes ["Hayes Dec."], ¶ 4.) Plaintiffs Clark and Desimone, the Kay Plaintiffs, were employed by Kay, a North Carolina-based company, formerly privately held, that Ecolab acquired in 1994. (Declaration of Stephanie Johnson ["Johnson Dec."], ¶¶ 3-4.) Kay focuses on cleaning and sanitizing products, services, and training programs for food retail markets, fast food or "quickservice" restaurants, movie theaters, and convenience stores. Kay is divided into two primary business units: Global Retail Services (GRS) and Global Quick Service (GQS). (*Id.* at ¶ 5.)

Kay employs approximately 165 Territory Representatives whose responsibilities include supporting customer operations with in-store training and by managing store-level sales, service, and food safety standards. (*Id.* at ¶ 5.) Kay Territory Representatives are responsible for accounts in 42 states throughout the country. (*Id.* at ¶ 6.) In 2007, approximately 95% of Kay's Territory Representatives resided outside of the State of New York. (*Id.* at ¶ 6.) The number of Kay Territory Representatives employed outside of New York has remained consistent for the past three years. (*Id.* at ¶ 6.)

Ecolab's "Institutional" division focuses on the hospitality, food service, and healthcare industries, with a focus on dish or "ware" washing services and products, on-premises laundry,

housekeeping, and water filtration and conditioning.  (Hayes Dec. ¶ 3.)  The Institutional division is headquartered in St. Paul, Minnesota.

>    **B.    The Named Plaintiffs.**

Plaintiff Michael Clark, who works and resides in California, is currently a Territory Representative for Kay.  (Class Action Complaint ["Complt."], Doc. No. 1, ¶¶ 9-10; Johnson Dec. ¶ 7.)  Plaintiff Franco Desimone is a former Kay Senior Territory Representative, who was employed between June 20, 2003, and November 19, 2007, and worked in California, Washington, and Oregon during the course of his employment.  (Johnson Dec. ¶ 7.)  According to the pleadings, Desimone currently resides in Idaho.  (First Amended Class Action Complaint ["Am. Complt."], Doc. No. 19, ¶¶ 18-19; Johnson Dec. ¶ 7.)

The two additional named plaintiffs (the Institutional Plaintiffs), David Starkman and John Dinisi, were never employed by Kay.  David Starkman (August 2001 – February 2007) and John Dinisi (August 2003 – September 2007) were employed as Route Managers in Ecolab's Institutional division.  (Hayes Dec. ¶ 6.)  Starkman worked in, and (according to the First Amended Complaint) currently resides in California, and Dinisi worked in and resides in New York.  (Am. Complt., ¶¶ 12-13, 15-16.)

**II.    THE FIRST AMENDED COMPLAINT IN *CLARK*, AND ITS RELATIONSHIP TO PREVIOUSLY FILED LITIGATION IN THIS JUDICIAL DISTRICT.**

>    **A.    The Initial Complaint in *Clark*.**

Plaintiff Clark was the sole named plaintiff when this case was originally filed on October 4, 2007.  (*See* Complt.)  Clark alleged that Ecolab violated the Fair Labor Standards Act ("FLSA") by its failure to pay overtime, and California law by its failure to observe rest and meal periods, failure to timely pay wages, and failure to maintain adequate wage records.  (Complt. ¶¶ 6, 55, 62, 67, 72.)  Pursuant to Fed. R. Civ. P. 23, Clark brought the California-based claims "individually and on behalf of all others similarly situated" consisting of "all persons who have

worked for Defendant in California" between October 3, 2003, and through date of final judgment. (Complt. ¶ 25.)

Count I of the Complaint alleges that Ecolab unlawfully failed to pay overtime wages and keep accurate records of hours worked. (Complt. ¶¶ 47-48.) Clark initially pled Count I as a collective action under Section 216(b) of the FLSA on behalf of himself and "similarly situated" persons who worked for Defendant "in a non-supervisory capacity between August 10, 2005 and the date of final judgment in this matter, who regularly performed services on the premises of Defendant's customers, drove vehicles of 10,000 pounds or less and were not required by Federal law to be placarded for hazardous materials." (Complt. ¶ 35.)

### B. Plaintiff Clark Amends His Pleadings, Adding Additional Named Plaintiffs.

Plaintiff Clark amended his pleadings by filing a "First Amended Class Action Complaint" on December 4, 2007. (*See* Am. Complt.) Plaintiffs' First Amended Complaint adds Starkman, Desimone, and Dinisi as named plaintiffs and restates the same collective action allegations under Rule 216(b) raised in Count I the initial Complaint. (Am. Complt. ¶¶ 77-78, 82-94.) Starkman, Desimone, and Clark allege five separate causes of action under California law, pursuant to Fed. R. Civ. P. 23, incorporating the California state law claims Clark raised initially, and adding a claim for unfair competition based on the underlying alleged violations of California law. (Am. Complt. ¶¶ 37, 119.) Desimone brings a claim under Washington and Oregon law, pursuant to Fed. R. Civ. P. 23 on behalf of all non-supervisory employees "who have worked for Defendant in Washington (and Oregon) between October 4, 2004, and the date of final judgment in this matter, who regularly performed services on Defendant's business customers' premises." (Am. Complt. ¶¶ 57, 67.)

Dinisi, the only named plaintiff who purports to have any connection to the State of New York, alleges a claim for failure to pay wages and keep proper wage records under New York Labor Law, on behalf of:

> all persons who have worked for Defendant in New York in a non-supervisory capacity between August 10, 2005 and the date of final judgment in this matter, who regularly performed services on Defendant's business customers' premises, drove vehicles of 10,000 pounds or less and were not required by Federal law to be placarded for hazardous materials.

(Am. Complt. ¶¶ 47, 128-29.)

**C.    Plaintiffs' Counsel's Previously Filed Case Now Pending in the Southern District of New York Before Judge Crotty.**

The Institutional Plaintiffs' claims are also reasonably encompassed by the claims made by members of a collective class in a previously filed lawsuit in the Southern District of New York.  On June 8, 2004, Plaintiffs' same counsel filed wage and hour claims in this District, in a case captioned *Masson v. Ecolab, Inc.*, 04-cv-4488 ("*Masson*"), on behalf of another former Ecolab Institutional Route Manager, Troy Masson.  The claims alleged in *Masson* are brought on behalf of "all Route Managers who are not paid time and one-half overtime pay for hours over 40."  (*Masson* Complt. ¶ 7.)  Masson later moved for, and on August 17, 2005, was granted conditional certification of the following collective class:

> Ecolab Route Managers, Sales Route Specialists, Service Professionals employed in the past three years, whose job duties primarily consisted of repair and maintenance of leased commercial dishwashing machines, and who were not paid overtime for hours worked in excess of 40 hours.

(Ptf.'s Motion to Approve Collective Action Notice [Doc. No. 10], Ex. B; Order [Doc. No. 26], p. 42.)

Pursuant to the Court's August 17, 2005 order, the *Masson* plaintiffs distributed collective action notices and over 150 individuals filed consent forms to join in that action.  (*See Masson*, Doc. Nos. 27 – 190 [excluding Doc. Nos. 31, 114, 166].)  The *Masson* litigation remains ongoing and the parties are in the discovery process.  (Hayes Dec. ¶ 5.)

## III.   THE RELEVANT EVIDENCE PERTAINING TO THE KAY PLAINTIFFS' CLAIMS IS LOCATED IN NORTH CAROLINA.

### A.   The Key Evidence, Witnesses, and Documentary Evidence is Located in Greensboro, North Carolina, at Kay Corporate Headquarters.

Kay's human resources and division-specific work practices emanate from its Greensboro, North Carolina headquarters.  (Johnson Dec. ¶ 9.)  The duties and responsibilities of the positions encompassed by the Kay Plaintiffs' class claims were developed by Kay management.  (*Id.* at ¶ 9.)  Personnel records pertaining to the Kay Plaintiffs and putative class members are located in either Greensboro or St. Paul, Minnesota.  (*Id.*)  Kay Territory Representatives' training and orientation materials are administered from Greensboro.  Materials such as job descriptions, policies governing Territory Representatives' employment, and documents supporting their exempt status are located largely in Greensboro and St. Paul.  (*Id.*)  Virtually no relevant records or policies relating to the claims at issue in this lawsuit exist in New York.  (Johnson Dec. ¶ 9.)

Neither Kay Plaintiff worked or lived in New York.  (Johnson Dec. at ¶ 7.)  In fact, during the past three years, approximately 95% of the Territory Representatives/Senior Territory Representatives employed by Kay have lived and worked outside New York.  (*Id.* at ¶ 6.)  Territory Representatives and Senior Territory Representatives report to District Managers, who in turn report to Area Managers.  (*Id.* at ¶ 8.)  Kay employs approximately 20 District Managers, all of whom are located outside of New York.  (*Id.*)  Clark's District Manager resides in Campbell, California, and Desimone's former manager resides in Castle Rock, Colorado.  (*Id.*)

**B.    Key Witnesses Reside in the Middle District of North Carolina or Closer to that Venue than the Southern District of New York.**

Relevant witnesses in the dispute alleged by the Kay Plaintiffs include key management-level employees located primarily at Kay headquarters in Greensboro.  (Johnson Dec. ¶ 10.)  Kay believes several non-party witnesses who may have relevant information also reside in or around Greensboro.  (*Id.*)  Ecolab is unaware of any witnesses it is likely to call who reside in New York. (*Id.*)  A list of key witnesses located in Greensboro, along with a brief description of their likely areas of testimony is as follows:

| NAME | TITLE | SUBJECT MATTER |
| --- | --- | --- |
| Michele Deuterman | Vice President, Human Resources and Administration | Human Resources policies, procedures and programs, Field Sales duties and training programs |
| Stephanie Johnson | Human Resources Manager | Human Resources policies, procedures and programs, Field Sales duties and training programs |
| Robert Casey | Field Sales Training Specialist | Field Sales procedures, duties, and training |
| Martin Y. Juhn | General Manager – Global Quick Service | Field Sales policies, procedures, directives and programs, duties and responsibilities of Territory Representatives in the Global Quick Service operations |
| Michael F. Howard | Vice President, Field Sales, Global Quick Service | Field Sales policies, procedures, directives and programs, duties and responsibilities of Territory Representatives in the Global Quick Service operations |
| David McCulloch | Area Manager, Global Quick Service | Field Sales policies, procedures, directives and programs, duties and responsibilities of Territory Representatives in the Global Quick Service operations |
| Bobby Mendez | Vice President/General Manager Global Retail | Field Sales policies, procedures, directives and |

| | | |
|---|---|---|
| | Services | programs duties and responsibilities of Territory Representatives in the Global Retail Services operations |
| Geoffrey McClure | Vice President, Field Sales – Global Retail Services | Field Sales policies, procedures, directives and programs duties and responsibilities of Territory Representatives in the Global Retail Services operations |

(*Id.*)

In addition, other critical witnesses are located outside of New York:

| NAME (LOCATION) | TITLE | SUBJECT MATTER |
|---|---|---|
| Robert Millward (Mesa, AZ) | Western Area Manager, Global Retail Services | Field Sales policies, procedures, directives and programs duties and responsibilities of Territory Representatives in the Global Retail Services Operations |
| Jarron Turner (Castle Rock, CO) | Area Manager | Field Sales policies, procedures, directives and programs duties and responsibilities of Territory Representatives in the Global Quickservice Operations, including plaintiff Desimone's specific job duties and responsibilities |

(*Id.* at ¶ 12.)

There may also be non-party witnesses, former Kay management-level employees, who reside in or around Greensboro, who may have knowledge and information relevant to this case. (Johnson Dec. ¶ 13.) In particular, former Kay Vice President of Human Resources David Moff is likely to have knowledge regarding the duties and classifications of the positions at issue in this case. Moff resides in or around Greensboro. (*Id.*)

If trial in this matter is held in New York, the Greensboro witnesses would have to travel approximately 544 miles each way. (Mapquest directions from Greensboro to New York; Voss Dec. 4, Ex. E.) This would take approximately 9 hours each way by car. (*Id.*) By contrast, there are *no* witnesses that would be inconvenienced by litigating this case in the Middle District of North Carolina. Attendance at hearing and a lengthy trial in New York will require Company witnesses to be away from their work and home, which would substantially disrupt Kay's business operations and personal schedules of Defendant's witnesses. (Johnson Dec. ¶ 14.) Many of these individuals hold critical management roles in the Company, and their responsibilities would have to be delegated to others, or not performed at all, during disruption on account of participation in this action. It would substantially reduce such disruption for the Court to transfer venue to the Middle District of North Carolina, and would likewise reduce transportation, lodging, and meal expenses for these key witnesses. (*Id.*)

In contrast, transfer of venue of Clark and Desimone's cases to the Middle District of North Carolina does not create any more of a hardship for them than venue in New York. The travel distance is essentially the same: 2,890 miles for Clark and 2,544 for Desimone to New York, versus 2,760 and 2545 miles, respectively, to Greensboro. (Voss Dec. ¶¶ 5-8, Exs. F-I [Mapquest directions from Plaintiff Clark's and Desimone's cities of residence to New York, New York, and to Greensboro, North Carolina].)

## LEGAL ARGUMENT

I.   **ALL RELEVANT FACTORS SUPPORT TRANSFER OF THE KAY PLAINTIFFS' CLAIMS TO NORTH CAROLINA.**

A.   **The Statutory Standard Governing Motions to Transfer Venue.**

The change of venue statute, 28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justices, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The

purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *In re Collins & Aikman Corp. Securities Litigation*, 438 F. Supp.2d 392, 394 (S.D.N.Y. 2006) (citations omitted); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981) (noting that Congress enacted Section 1404 as a "federal housekeeping measure, allowing an easy change of venue within a unified federal system."). Motions to transfer lie within the broad discretion of the district court and are determined upon considerations of convenience and fairness on a case-by-case basis. *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp.2d 31, 34 (E.D.N.Y. 2000).

**B.**     **The Kay Plaintiffs Plainly Could Have Filed this Action in the Middle District of North Carolina.**

Courts ask two questions to determine whether transfer is appropriate. First, the court must determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. 28 U.S.C. § 1404(a). Second, the court must evaluate whether transfer is warranted using several factors relating to the convenience of transfer and the interests of justice.

As to the first prong of this inquiry, transfer of this case is appropriate because both proper venue and personal jurisdiction exist in the Middle District of North Carolina. Venue is proper in a judicial district in which any defendant resides, and a corporate defendant such as Ecolab "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *Freeman v. Hoffmann-LaRoche, Inc.,* Case No. 06-13497, 2007 U.S. Dist. LEXIS 23132, *6 (S.D.N.Y.). Thus, this action could have been brought in the Middle District of North Carolina, where Kay, an Ecolab subsidiary, maintains its corporate headquarters. (Johnson Dec. ¶ 3.)

C.     **The Convenience of the Parties and Interests of Justice Weigh Heavily in Favor of Transfer of the Kay Plaintiffs' Claims to the Middle District of North Carolina.**

1.     **The Relevant Factors.**

Courts consider the following factors in assessing whether transfer would serve the interests of justice and the convenience of the parties:

> (1) the weight accorded the plaintiff's choice of forum; (2) the locus of operative facts; (3) the convenience of the parties; (4) the convenience of the witnesses; (5) the availability of process to compel unwilling witnesses; (6) the location of relevant documents and the relative ease of sources of proof; (7) trial efficiency and the interests of justice; and (8) the forum's familiarity with governing law.

*O'Hopp*, 88 F. Supp.2d at 34; *Berman v. Informix Corp.*, 30 F. Supp.2d 653, 657 (S.D.N.Y. 1998) (citation omitted)  As set forth below, all of these factors support transfer of the Kay Plaintiffs' claims to the Middle District of North Carolina.

2.     **The Kay Plaintiffs' Choice of Forum is Entitled to Little Weight.**

When considering a 1404(a) motion, the general rule is that the plaintiff's choice of forum should not be disturbed unless the balance of the factors tips heavily in favor of a transfer. *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp.2d at 34.  The weight of plaintiff's choice, however, "diminishes when the facts of the case reveal few meaningful connections to the plaintiff's chosen forum."  *Ramos de Almeida v. Powell*, Case No. 01-v-11630, FEP Cases (BNA) 1235 (S.D.N.Y. 2002).  In such situations, "plaintiff's choice of forum may be disturbed." *Id.*, *citing Berman*, 30 F. Supp.2d at 659.  Moreover, when a plaintiff purports to represent a nationwide class, his choice of forum is also given less weight.  *Earley v. BJ's Wholesale Club, Inc.*, Case No. 06-3529, 2007 U.S. Dist. LEXIS 40125, **5-6 (S.D.N.Y.); *O'Hopp*, 88 F. Supp.2d at 34; *Connors v. Lexington Ins. Co.*, 666 F. Supp. 434, 454 (E.D.N.Y. 1987).

The Kay Plaintiffs and the facts and circumstances surrounding their respective employment bear <u>no connection</u> whatsoever to New York. Clark works and resides in California, and Desimone purportedly resides in Idaho, having worked in Oregon, Washington, and California. (Johnson Dec. ¶ 7.) Moreover, the vast majority of individuals employed by Kay as Territory Representatives and Senior Territory Representatives (95%) worked and reside outside of New York. (*Id.* at ¶ 6.) This judicial district is *only* convenient to Plaintiffs' attorneys. Under the circumstances, the Court should accord little weight to their choice of forum.

### 3.  Transfer to the Middle District of North Carolina Will Serve the Convenience of the Parties and Witnesses.

The convenience of parties and witnesses is considered "the essential criteria under the venue statute" and is "the most significant factor." *Butcher v. Gerber Prods. Co.*, Case No. 98-1819, 1998 U.S. Dist. LEXIS 11869, *10 (S.D.N.Y.). Conversely, convenience of <u>counsel</u> is "of relatively little consequence" in the 1404 analysis. *Id.* The convenience of non-party witnesses is a particularly important factor. *Age Group v. Regal Logistics, Corp.*, Case No. 06-4328, 2007 U.S. Dist. LEXIS 62476, *12 (S.D.N.Y.) ("Traditionally, the most important factor in determining whether to grant a motion to transfer is the convenience of the witnesses, especially those that are non-party witnesses.").

The key witnesses who may be called to testify in this case, including human resources and other management level employees, reside in or around Greensboro, North Carolina. Trial in New York would be costly and inconvenient for Kay management personnel and other witnesses, which would suffer the substantial business disruption, transportation, lodging, and meal costs associated with multiple witnesses who would have to travel and remain in New York for trial – one of the most expensive cities in the world. *See* http://en.wikipedia.org/wiki/List_of_Most_Expensive_Cities. These expenses would be significantly reduced were the Court to transfer the matter to the Middle District of North

Carolina. The burden of trial in New York on Kay and its employee witnesses strongly supports transfer. *Evancho v. Sanofi-Aventis U.S., Inc.*, Case No. C 07-00098 SI, 2007 WL 1302985, **3-4 (N.D. Cal.) (discussing cases transferring cases to the forum in which a party has its principal place of business); *Freeman v. Hoffman-La Roche, Inc.*, Case No. 06-13497, 2007 U.S. Dist. LEXIS 23132, *6 (S.D.N.Y.) (placing great weight on location of corporate witnesses in granting transfer of venue).

Moreover, this New York forum is no more convenient for named plaintiffs and putative class members than it is for either Ecolab or Kay. Clark and Desimone themselves live over 2,500 miles from the Southern District of New York. Potential FLSA class members live in 42 different states, the vast majority of whom, 95%, live outside of New York. By definition, the state law classes Clark and Desimone purport to define (classes resident in California, Oregon, and Washington) implicate current and former Ecolab and/or Kay employees <u>outside</u> of New York. Thus, the availability of process to compel unwilling witnesses will be limited, as few, if any, putative class members reside within the radius of this Court's subpoena power.

Under similar circumstances, other courts have found venue transfer appropriate, in light of the absence of any connection between the forum and potential witnesses. *Butcher*, 1998 U.S. Dist. LEXIS 11869 (granting motion to transfer where evidence showed that defendant's witnesses, all but one named plaintiff, and most putative class members, lived outside of New York); *Ramos de Almeida*, 90 FEP Cases 1235 (S.D.N.Y. 2002) (same); *Evancho*, 2007 WL 1302985, *3 (transferring venue in wage/hour case in part based on location of putative class members, who were largely outside of plaintiff's chosen forum); *Foster v. Nationwide Mutual Ins. Co.*, Order Granting Venue Transfer, Case No. 3:07-cv-04928 (N.D. Cal., December 14, 2007) (same).

**4.**     **Ease of Access to Sources of Proof Favors Transfer.**

The location of documents and ease of access to sources of proof is "clearly an important consideration in motions to transfer pursuant to 28 U.S.C. § 1404(a)." *Butcher*, 1998 U.S. Dist. LEXIS 11869 at \*20.  Ecolab is unaware of <u>any</u> relevant documents and/or other sources of proof concerning Clark and Desimone's claims that could conceivably be found in the Southern District of New York.  In fact, the dearth of putative class members in this District only underscores the fact  that there is virtually nothing of "evidentiary value" in this venue.

Greensboro, on the other hand, is where Kay maintains records relating to this dispute, including employment files, documents relating to the duties and responsibilities of Territory Representatives, including job descriptions and training materials.   (Johnson Dec. ¶ 9.)  Greensboro is also where Ecolab administered policies relating to Clark and Desimone's employment, along with other Kay Territory Representatives they seek to include in this action.  (*Id.*)   Most of the witnesses who may testify regarding issues relating to Territory Representatives' exempt status are located in Greensboro – some are former executives of Kay Chemical who were with the Company before Ecolab purchased it in 1994; none are located in New York.  (*Id.* at ¶¶ 10-11.)  Courts have recognized that "access to proof" in these types of cases is often best served if venue lies in the district encompassing defendant's headquarters. *Earley*, 2007 U.S. Dist. LEXIS 40125 at \*7 (noting that the "single most likely source of relevant documents is Defendant's headquarters"); *Butcher*, 1998 U.S. Dist. LEXIS 11869, \*21 (noting that transfer was appropriate to location where documents relevant to defendant's decisions, individuals who could explain those decisions, and the corporation itself were located in transferee venue); *Foster*, Order at p. 5 (transferring action to district encompassing defendant's headquarters, where key witnesses and documents relating to plaintiffs' FLSA claims were located).

     5.     **The Federal Court in the Middle District of North Carolina is Fully Competent to Interpret and Apply Various Wage and Hour Laws.**

The Kay Plaintiffs allege that they were misclassified as "exempt," and that Ecolab failed to properly pay overtime as required under the FLSA, and that the Defendant also violated California, Washington, and Oregon state laws through wage-payment related practices. (Am. Complt. ¶¶ 79-81, 89-90, 100, 104, 138, 145.) Judges in the Middle District of North Carolina are surely as competent as those in this District to apply federal wage and hour law. With respect to the state law claims, this factor is neutral, as neither this Court nor courts in the Middle District of North Carolina have any special competence in the interpretation of California, Oregon, and Washington wage laws. Courts have held, however, that where the main federal claim is better resolved in the transferee district, the pendency of supplemental state law claims should not override that interest in determining the federal claim in the most convenient forum. *In re: Funeral Consumers Antitrust Litigation*, Case No. C 05-01804 WHA, *et al.,* 2005 WL 2334362 (N.D. Cal.); *Everest Capital Ltd. v. Everest Funds Mgmt, LLC*, 178 F. Supp.2d 459, 468 (S.D.N.Y. 2002) (noting that presence of other state law claims did not override other 1404 factors).

     6.     **The Middle District of North Carolina Has a Less Crowded Docket.**

The respective case loads of this District and the Middle District of North Carolina is another factor supporting transfer of the Kay Plaintiffs' claims to that venue. The most recent statistical reports on uscourts.gov indicate that in 2006, the Southern District of New York had 20,047 cases pending before 28 judges, an average of approximately 716 cases per judge, plainly one of the busier judicial districts within the federal courts system. (Voss Dec. ¶ 9, Ex. J [Judicial Caseload Profile for the Southern District of New York].) In stark contrast, the Middle District of North Carolina had 1,295 pending cases before four judges, an average of approximately 324 cases per judge. (Voss Dec. ¶ 10, Ex. K [Judicial Caseload Profile for the Middle District of

North Carolina].) The relative docket congestion supports transfer of this case to North Carolina.

> **7.      This District Does Not Maintain a Greater Local Interest in the Controversy.**

This case smacks of forum shopping, in light of New York's tenuous connection to the parties and claims alleged by the Kay Plaintiffs. Simply stated, there is no local vested interest in New York for a dispute between a California and Idaho resident and a North Carolina headquartered business. The Middle District of North Carolina has a stronger localized interest in this dispute, as the practices, policies, and witnesses front and center in this case emanated from and/or are located in Greensboro. This factor supports transfer.

## II.     THE COURT SHOULD TRANSFER THE REMAINING INSTITUTIONAL PLAINTIFFS, STARKMAN AND DINISI, INTO THE *MASSON* LITIGATION BASED ON THE "FIRST FILED" RULE.

> **A.      The "First Filed" Rule Applies to Protect Judicial Economy and Guard Against Inconsistent Judgments.**

Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts follow a "first filed" rule, whereby the court which first has possession of the action decides it. *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994); *Pacesetter Systems, Inc. v. Medtronic. Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."). The "first filed" rule protects parties from the considerable expense and potential for inconsistent judgments that duplicative litigation entails. *Kidd v. Andrews*, 340 F. Supp.2d 333, 335-36 (W.D.N.Y. 2004); *800-Flowers, Inc.*, 860 F. Supp. at 132 ("the first filed rule was developed to 'serve the purposes of promoting efficiency [] and should not be disregarded lightly.").

- 17 -

**B.    The Issues in *Masson* Are Substantially Similar to the Issues Raised by the Institutional Plaintiffs.**

There can be no reasonable dispute that the claims raised in *Masson* and the claims now raised by the Institutional Plaintiffs, Starkman and Dinisi, in *Clark* satisfy the "similarity" requirement.    *Manufacturers Hanover Trust Co. v. Palmer Corp.,* 798 F. Supp. 161, 167 (S.D.N.Y. 1992) ("The interests of justice require that the cases be related, not identical"); *see also, Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625 (9th Cir. 1991) (affirming district court's finding that first-to-file rule applied, despite fact that first-filed action involved additional claims and parties); *General Trading Co. Plus v. Ja-Rue, Inc.*, 41 F. Supp. 2d 421, 424 n.2 (S.D.N.Y. 1998) ("The first-filed rule can be triggered even when the competing claims do not present the exact same issues").

Indeed, a California District Court recently confronted a similar situation and transferred wage and hour claims based on the "first filed" rule.  *Jumapao v. Washington Mutual Bank, N.A.*, Case No. 06-2285, 2007 U.S. Dist. LEXIS 88216 (S.D. Cal.).  In *Jumapao*, the plaintiff brought an action on behalf of Washington Mutual loan consultants, alleging FLSA and California state law violations for an alleged improper failure to pay minimum wage and overtime, inadequate record-keeping, and failure to observe meal and rest breaks.  Six months prior to Jumapao's filing, however, in the Eastern District of New York, another loan consultant filed a collective action under the FLSA and raised state law claims on behalf of those individuals, raising substantially similar state and federal wage-hour violations.  The Court observed, in giving the first-filed case priority, that both cases:

> require the Court to determine, among other things, whether Washington Mutual's loan consultants are non-exempt employees, whether the alleged failure to pay minimum wages and overtime violated California law, and whether Washington Mutual failed to maintain records required under California law.

2007 U.S. Dist. LEXIS 88216, *6.

The same is true as between Plaintiff Starkman and Dinisi's claims in this case and the claims in *Masson*: at their core, both cases call for a legal determination regarding the exempt status of Institutional Route Managers, and Ecolab's pay and record-keeping practices with respect to these employees. The risk of inconsistent adjudication and the burden of duplicative efforts are obvious unless the claims are not consolidated. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000) ("plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time").

Ordinarily, the first-filed action has priority "absent a showing of a balance of convenience or special circumstances giving priority to the second suit." *800-Flowers, Inc.*, *Id.* Courts have noted that the "balancing factors of convenience is essentially an equitable task. Important considerations include the same ones that apply to a § 1404(a) motion to transfer venue." *General Trading Co. Plus*, 41 F. Supp.2d at 424 (citations omitted).

The claims alleged by Plaintiffs Starkman and Dinisi, to the extent they are challenging their exempt status as Route Managers, are reasonably litigated within the scope of the class conditionally certified as a collective action in *Masson*. Like plaintiff Troy Masson, Starkman is a former Ecolab Institutional Division Route Manager, employed from August 2001 to February 2007, who alleges he was improperly classified and denied overtime. (Hayes Dec. ¶ 6.) Dinisi, who was employed by Ecolab from October 2004 to September 2007, was also employed as a Route Manager during the final period of his employment.[1] (*Id.*)

It would also violate basic principles of judicial economy to allow Starkman and Dinisi to pursue parallel claims to those at issue in *Masson*, on behalf of the same group of plaintiffs, against the same defendant. Plaintiffs' counsel frankly conceded the point in *Masson* in requesting (and receiving) permission for an additional opt-in to be allowed into the *Masson* case

---

[1] Ecolab does not concede that the class was appropriately certified in *Masson*.

after the initial deadline for filing consent forms had expired.  In so requesting, plaintiffs' counsel noted:

> We seek defendant's consent in joining [opt-in] in this case, rather than bringing an entirely new action on his behalf.  Initiating a new lawsuit would not be the most efficient means of addressing his claims.

(Voss Dec. ¶ 3, Ex. C [June 30, 2006 letter from Tara Bernstein to Jeffrey Brecher].)  Truly, filing multiple nationwide "class actions" that purport to challenge the same job classifications is not "the most efficient means" to resolve this legal dispute.

Under the unique circumstances of this case, the "convenience" analysis is not particularly relevant to Defendant's "first filed" argument, and certainly does not warrant a departure from the "first filed" rule.  Both cases are pending in the Southern District of New York, which is not a particularly convenient forum for Ecolab, its witnesses, and the majority of putative class members (apart from plaintiff Dinisi).  Instead, the Court should transfer Plaintiff Starkman and Dinisi's claims based on the core principles of comity and judicial economy, given that the adjudication of the claims asserted by the conditionally certified collective class in *Masson,* including whether these claims can be appropriately certified on behalf of a class for trial, involves the same substantive issues now raised by Starkman and Dinisi in this Action.

## CONCLUSION

For the reasons set forth above, the Court should transfer the claims alleged by the Kay Plaintiffs, Michael Clark and Franco Desimone, to the Middle District of North Carolina, based on the convenience of the parties and witnesses and the interests of justice.  The Court should

transfer the claims alleged by the Institutional Plaintiffs, David Starkman and John Dinisi, to the

pending *Masson* litigation before Judge Crotty, as it is a first-filed matter.


Dated:  December 26, 2007


LITTLER MENDELSON, P.C.
885 Third Avenue, 16th Floor
New York, New York  10022-4834
212.583.9600

By:  /s/ David M. Wirtz
    David M. Wirtz
    dwirtz@littler.com

Andrew J. Voss, Esq.
Minnesota Bar No. 241556
Shirley Lerner
Minnesota Bar No. 151245)
applications to appeal *pro hac vice* forthcoming
Littler Mendelson, P.C.
1300 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Tel:  (612) 630-1000
Fax: (612) 630-9626
avoss@littler.com

Counsel for DEFENDANT ECOLAB INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of December 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the CM/ECF participants identified below.

Adam T. Klein (atk@outtengolden.com)

Dan Charles Getman (dgetman@getmanlaw.com)

Jack A. Raisner (jar@outtengolden.com)

Justin Mitchell Swartz (jms@outtengolden.com)

Matthew Thomas Dunn (mdunn@getmanlaw.com)

Michael J.D. Sweeney (msweeney@getmanlaw.com)

Tara Margo Bernstein (tbernstein@getmanlaw.com)

Rachel Megan Bien (rmb@outtengolden.com)

/s/ David M. Wirtz
David M. Wirtz

Firmwide:83909841.1 057118.1006