# EXHIBIT O

# TO

# DECLARATION OF ANDREW J. VOSS

In Support of Defendant's Motion to Transfer Venue and Consolidate Certain Plaintiffs with First-Filed Action

Re: <u>Clark v. Ecolab, Inc.</u>
Court File No. 07-CV-8623 (DLC)

LEXSEE 1998 U.S. DIST. LEXIS 11869

**ROBERT A. BUTCHER, THOMAS H. JOHNSON, JAMES THOMAS and DANIEL J. VELKOVICH, individually and as Class Representatives, Plaintiffs, - against - GERBER PRODUCTS COMPANY, Defendant.**

98 Civ. 1819 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1998 U.S. Dist. LEXIS 11869

July 29, 1998, Decided
August 3, 1998, Filed

**DISPOSITION:** [*1] Gerber's motion to transfer this action to the Western District of Michigan granted.

**COUNSEL:** For Plaintiffs: DANIEL L. BERGER, ESQ., DARNLEY D. STEWART, ESQ., Of Counsel, BERNSTEIN LITOWITZ BERGER & GROSSMAN, RICHARD M. RESNIK, ESQ., DAVID M. MONACHINO, ESQ., Of Counsel, MANDEL & RESNIK, RICHARD N. GRAY, ESQ., ANTHONY L. TERSIGNI, ESQ., Of Counsel, MEYERS TERSIGNI FELDMAN & GRAY, New York, NY.

For Defendant: IRA G. ROSENSTEIN, ESQ., JAMES H. McQUADE, ESQ., Of Counsel, ORRICK, HERRINGTON & SUTCLIFFE, New York, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

*OPINION*

**Sweet, D.J.**

Defendant Gerber Products Co. ("Gerber") has moved pursuant to *28 U.S.C. § 1404(a)* to transfer this action to the United States District Court for the Western District of Michigan on the grounds that the Western District of Michigan is a significantly more convenient forum for the parties and witnesses than is the Southern District of New York, and transfer would advance the overall interest of justice. For the reasons set forth below, the motion is granted.

*The Parties*

The Plaintiffs are former employees of Gerber. They are all forty years of age and older. The four [*2] named Plaintiffs bring this suit on behalf of themselves and a class of approximately 325 former Gerber employees whom Gerber discharged by Notice of Termination dated January 9, 1998.

Plaintiff Robert A. Butcher ("Butcher") is a resident of Centereach, New York, and was employed as a National Account Manager for Gerber prior to his termination. Butcher was 53 years old when he was terminated and had been employed by Gerber for 33 years.

Plaintiff Thomas H. Johnson ("Johnson") is a resident of Mesquite, Texas, and was employed as a National Account Manager for Gerber prior to his termination. Johnson was 49 years old when he was terminated and had been employed by Gerber for more than 27 years.

Plaintiff James H. Thomas ("Thomas") is a resident of Shreveport, Louisiana, and was employed as a Senior Sales Representative for Gerber prior to his termination. Thomas was 47 years old when he was terminated and had been employed by Gerber for more than 18 years.

Plaintiff Daniel J. Velkovich ("Velkovich") is a resident of Allentown, New Jersey, and was employed as a National Account Manager for Gerber prior to his termination. Velkovich was 55 years old when he was terminated and had [*3] been employed by Gerber for more than 34 years.

Gerber, a subsidiary of Novartis, a Swiss-based company, is a Michigan corporation which maintains its headquarters in Fremont, Michigan. Gerber manufactures and distributes baby and infant food products, licenses

Case 1:07-cv-08623-PAC    Document 39-5    Filed 12/26/2007    Page 3 of 9

Page 2
1998 U.S. Dist. LEXIS 11869, *

and distributes branded apparel for children, manufactures sundry nursery accessories and infant care items, and licenses the manufacture of baby food products internationally.

### Prior Proceedings and Facts

The prior proceedings and facts of this case have been set forth in a prior decision, familiarity with which is assumed. *See Butcher v. Gerber Products Co., 8 F. Supp. 2d 307, 1998 U.S. Dist. LEXIS 8048, 1998 WL 289869 (S.D.N.Y. 1998)*. Those facts and proceedings relevant to this motion are set forth below.

On February 23, 1998, the named Plaintiffs, Butcher, Johnson, Thomas, and Velkovich, filed charges with the Equal Employment Opportunity Commission (the "EEOC"), alleging that their termination from Gerber was the result of age discrimination in violation of the Age Discrimination in Employment Act, as amended, *29 U.S.C. § 621 et seq.* (the "ADEA"). On March 11, 1998, they received their Notices of Right to Sue from [*4] the EEOC. On March 13, 1998, the named Plaintiffs filed this class action under the ADEA, seeking declaratory and injunctive relief, compensatory and liquidated damages, attorneys fees and other appropriate legal and equitable relief.

On June 2, 1998, this Court converted Plaintiffs' motion for preliminary injunction to a summary judgment motion and granted summary judgment to Plaintiffs on the issue of whether they had waived their right to assert a claim under the ADEA by signing the Release and Waiver Agreement provided to them by Gerber. *See Butcher, 8 F. Supp. 2d 307, 1998 U.S. Dist. LEXIS 8048, 1998 WL 289869.*

Gerber maintains that this action arises from its decision to make a fundamental change in the way it does business. In the past, Gerber had sold its products, primarily baby food and baby care products, through the use of a direct sales force of Gerber associates. In January 1998, however, citing the ongoing consolidation of accounts, the increasing role of technology, and the move toward centralized buying decisions which diminished Gerber's opportunity for selling to accounts locally, Gerber announced its decision to convert to the use of independent food and care brokers to sell its products to customers, [*5] consisting primarily of grocery store chains and other retailers. This decision resulted in the virtual elimination of Gerber's direct sales force.

The four Plaintiffs, one of whom resides in New York, and the others in Texas, Louisiana, and New Jersey, filed this action on behalf of themselves and as representatives of a purported class of others similarly situated, alleging that by converting to a broker sales force and by amending its severance plan, Gerber violated the ADEA. The decisions to eliminate the sales force and to change its severance plan were made by Gerber in Michigan. All but one of the Gerber executives responsible for the decisions live in Michigan.

Gerber itself is located approximately 45 miles from Grand Rapids in the Western District of Michigan, and most of its executive officers have homes and work in and around Fremont, although Gerber does business throughout the United States. Its sales division is currently organized into four regions: the Western region, headquartered in Anaheim, California, the Eastern region, headquartered in Wayne, Pennsylvania, the Central region, headquartered in Schaumburg, Illinois, and the Southern region, headquartered in Duluth, [*6] Georgia. At the time of the conversion to a broker sales force, there were three sales regions which included the Northern region, headquartered in Grand Rapids, Michigan, the Western region in Anaheim, and the Southern region in Duluth.

Gerber filed its motion to transfer the action to the Western District of Michigan on April 27, 1998. The motion was heard and deemed fully submitted on June 3, 1998.

### Discussion

### *Motion To Transfer Venue Under § 1404(a) Is Granted*

#### A. *Legal Standard Under § 1404(a)*

Section 1404(a) provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*28 U.S.C. 1404(a).* This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *Wilshire Credit Corp. v. Barrett Capital Management Corp., 976 F. Supp. 174, 180 (W.D.N.Y. 1997).* Section 1404(a) strives to prevent waste "'of time, energy and money'" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" [*7] *Wilshire, 976 F. Supp. at 180 (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)).*

"'Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.'" *Linzer v. EMI Blackwood Music Inc., 904 F. Supp. 207, 216 (S.D.N.Y. 1995) (quoting In re Cuyahoga Equip. Corp.,*

980 F.2d 110, 117 (2d cir. 1992) (*citing Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988))). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995); *see Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989); *Austin v. International Bhd. of Teamsters-Airline Div. 2747*, 739 F. Supp. 206, 208 (S.D.N.Y. 1990).

The defendant moving for transfer must, in essence, demonstrate "'that transfer [*8] is in the best interests of the litigation.'" *Linzer*, 904 F. Supp. at 216 (quoting *Eskofot A/S v. E.I. du Pont de Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y. 1995)); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). The movant "must support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991).

The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire*, 976 F. Supp. at 180.

As to the first query, the parties do not dispute that the Western District of Michigan is a district where the action might have originally been brought. Therefore, it [*9] is only the second inquiry that requires examination.

In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice" under § 1404(a), courts generally consider several factors. The factors to be considered in the instant case include (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 1998 U.S. Dist. LEXIS 7681, 1998 WL 262601 (S.D.N.Y. 1998) (citing *Wilshire*, 976 F. Supp. at 181); *see Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 872 F. Supp. 1247, 1250 (S.D.N.Y. 1995); *Cento Group, S.p.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993).

**B. The Relevant Factors** [*10] **Applied**

Application of the delineated factors reveals that Gerber has met its burden under § 1404(a).

**1. Convenience of Witnesses and Parties, Location of Documents, and Ease of Access to Sources of Proof**

"The convenience of parties and witnesses is considered 'the essential criteria under the venue statute,' and 'the most significant factor.'" *Cento Group*, 822 F. Supp. at 1060 (quoting *First City Fed. Sav. Bank v. Registrar*, 677 F. Supp. 236, 237 (S.D.N.Y. 1988), and *Nieves v. American Airlines*, 700 F. Supp. 769, 773 (S.D.N.Y. 1988), respectively). The convenience of counsel, however, is of relatively little consequence under § 1404(a). 822 F. Supp. at 1061. *See also Berry v. New York State Dep't of Correctional Servs.*, 808 F. Supp. 1106, 1110 (S.D.N.Y. 1992) (stating that an attorney's "inconvenience is accorded little weight under federal law").

In the instant case, many of the witnesses reside in Michigan. Additionally, Gerber, along with the documents relevant to Gerber's decisions at issue, are located in Michigan. Of the named Plaintiffs, only Butcher is a resident of New York, while Johnson resides in Texas, Thomas in Louisiana, and Velkovich [*11] in New Jersey. Based on the allegations in the complaint, Gerber estimates that the potential class members live in 44 different states. All of Plaintiffs' attorneys are located in New York. These factors, on balance, weigh in favor of transferring the action to the Western District of Michigan.

Regarding witnesses, Gerber asserts that five persons currently or formerly employed by Gerber have knowledge of the reasons why Gerber decided to convert from a direct sales force to a broker sales force and who also have knowledge concerning the amendments to the severance package about which the Plaintiffs complain. Of these witnesses who will likely be required to testify, three live in Michigan and two in the neighboring state of Illinois. Afred A. Piergallini ("Piergallini"), Vice Chairman, President and CEO; Kristina Kiley ("Kiley"), Vice President, Human Resources; and David Hoogerwerf, former Senior Vice President and CFO, U.S. Foods all reside in Michigan, and Lee VanSyckle, Senior Vice President, National Sales Manager, U.S. Operations; and the independent consultant engaged by Gerber in connection with the decision to convert to a broker sales force live in Illinois. (*See* Kiley [*12] Aff. P 6.) The decisions

at issue were made in Michigan. As Gerber points out, the people who made them will be material witnesses.

The complaint itself makes specific reference to Piergallini, Lee VanSyckle, as well as three other current or former Gerber executives, all of whom are located in states other than New York and who are likely to testify: Greg Brown, former Senior Vice President of Sales is, to the best of Gerber's knowledge, located in Ohio; Randy Hinshaw, former Vice President, Region Sales Manager - Northern Region is located in Illinois; and Mark Malone, Vice President, Region Sales Manager - Southern Region is located in Michigan. Additionally, Gerber represents that a majority of its executives with relevant information also reside outside of New York and primarily in Michigan or the Midwest.

Plaintiffs take issue with the affidavit submitted by Kristina Kiley in support of the motion to transfer, claiming that it contains no meaningful description of the substance of the testimony to be given by each witness, and that no affidavit has been submitted from any of the witnesses mentioned by Kiley. In support of their contention, Plaintiffs cite *Doman v. Herman,* [*13] *1995 U.S. Dist. LEXIS 7787, 95* Civ. 0260, 1995 WL 347402, at *2 (S.D.N.Y. June 8, 1995), in which this Court, in denying a motion to transfer, stated that "no submission has been made by the [defendants] specifying what they would testify to, or its relevance. Under these circumstances the materiality of their testimony has not been established as a ground for transfer."

Here, however, Gerber has offered that the witnesses it names are material to the litigation as they have knowledge regarding Gerber's decisions and will testify concerning the reasons for those decisions. Contrary to Plaintiffs' assertion, a detailed affidavit from each potential witness outlining his or her specific testimony is not required. The Kiley Affidavit includes a general statement of the nature of the witnesses' testimony, and that is sufficient. *See e.g., Hernandez, 761 F. Supp. at 987.*

Plaintiffs further contend that no claim has been made by Gerber that it would be inconvenient for any of Gerber's five witnesses to come to New York for this case. Plaintiffs point to the fact, as stated by Butcher and Velkovich in affidavit, that all of the Gerber officials identified have traveled to New York in the past, utilizing the [*14] corporate jets maintained by Gerber for that purpose, and represent that it is apparent that Piergallini and other Gerber personnel come to New York and the New York metropolitan area on a regular basis for various business reasons. According to Plaintiffs, the convenience of New York cannot be seriously questioned given the relationship of the witnesses to Gerber and the availability of the corporate jets to transport them to New York.

Gerber, however, contends that the testimony regarding Gerber's corporate jets is incorrect. It states that in April 1998, Gerber transferred its rights to its corporate airplanes to Novartis Services, Inc. ("NSI") by agreement, granting NSI sole control over use and access to the jets. Additionally, Gerber's corporate policy prior to the assignment of its rights did not permit individual employees unfettered access to a jet, as the jet was available only to groups of three or more when at least one senior executive was present. Gerber maintains that travel by commercial airlines was the customary means of transportation.

Regardless of the use of a corporate jet, the fact that some Gerber employees occasionally may travel to New York on company business [*15] only slightly favors denial of transfer. After all, it is more convenient for the witnesses living in or near Michigan to testify there. As to those residing outside of both Michigan and New York, if testimony is required at trial, they will need to travel whatever the ruling on the instant motion. Of the witnesses referred to, three reside in Illinois and one in Ohio; Michigan is more convenient for these witnesses than is New York.

Plaintiffs have pointed to no material witness, absent Butcher, who lives in New York. This leads to the inquiry concerning convenience of the parties. Gerber is located in Michigan. Plaintiffs highlight that Gerber has an insurance subsidiary in White Plains, New York, and the United States headquarters of Novartis, its parent company, is located in northern New Jersey. The location of Gerber's subsidiary and parent, each of which have nothing to do with the present action, does little to diminish Gerber's assertion that Michigan would provide a more convenient forum.

As noted above, of the four named Plaintiffs in this action, only one resides in New York, and he resides in the area served by the Eastern District of New York. The remaining named Plaintiffs [*16] have no connection to New York and would be required to travel there for trial. Members of the purported class reside in 44 states. Plaintiffs are aware that 24 of the 180 former Gerber associates that have contacted Plaintiffs' counsel reside in New York and have opted in to this action. According to Gerber, however, none has chosen to identify him or herself or opt in formally. Nevertheless, over 85% of the former associates to whom Plaintiffs' counsel have spoken reside outside of New York, deflating the contention that New York is the more convenient forum for this case.

Furthermore, Gerber asserts that for all practical purposes, none of the Plaintiffs will be principal witnesses on the central issue of whether Gerber's decisions violated the ADEA. Thus, their testimony is unnecessary to liability. To the extent depositions are taken of any of

Case 1:07-cv-08623-PAC    Document 39-5    Filed 12/26/2007    Page 6 of 9

Page 5
1998 U.S. Dist. LEXIS 11869, *

the opt-ins, contends Gerber, they will likely be taken in the cities in which those Plaintiffs reside. If this case is tried, any Plaintiffs not residing in New York would be required to travel irrespective of whether the trial is held in Michigan or New York. Gerber observes, and it is undisputed, that the cost of food and lodging in [*17] New York is significantly greater than Fremont, Michigan or its environs.

Plaintiffs state that because Velkovich's physical condition would render a transfer to Michigan "particularly prejudicial to him," whereas New York is not an inconvenient forum for Gerber, the reasons for transfer evaporate. Plaintiffs again cite *Doman* as authority, where this Court took into account that the plaintiff had had a heard attack in its decision to deny transfer, noting that "depositions can be arranged to minimize any inconvenience to the parties." *Doman, 1995 U.S. Dist. LEXIS 7787, 1995 WL 347402,* at *2.

Gerber responds that Velkovich has supplied no admissible evidence that he could not participate in this action if the case is transferred to the Western District of Michigan, and instead Plaintiffs rely on hearsay testimony that Velkovich's doctor "informed [him] that travel to Michigan . . . would be detrimental to [his] health." (Velkovich Aff. P 3.) There has been no affidavit testimony of any doctor testifying to the medical condition of Velkovich currently or to his prognosis for the future.

Even if Velkovich's health is such that a transfer would present a hardship to him, Plaintiffs' contention that [*18] Velkovich's health tips the scale in favor of transfer is not supported by their reliance on *Doman.* Although this Court took the plaintiff's health into account in *Doman,* the motion to transfer that case to California, the defendant's state, was denied because the testimonial proof at trial was likely to be limited to the plaintiff and the defendant (each of whom would be inconvenienced by having to testify in the other's preferred forum), because the principal records were in New York where the plaintiff resided, and because no operative events giving rise to plaintiff's claim took place in California. *See Doman, 1995 U.S. Dist. LEXIS 7787, 1995 WL 347402,* at *2. By contrast, in this case, the principal records are located, and the operative facts arose, in Michigan, and the proof required involves testimony from witnesses, many of whom reside in or close to Michigan.

Moreover, Gerber maintains that the materiality of Velkovich's testimony is diminished by the fact that the resolution of this case will turn on Gerber's business decision to use a different means of selling its product, and that it is doubtful that Velkovich or any other Plaintiff or opt-in will be able to shed light on that issue. [*19] Given all the factors as stated above and as will be stated below, while Velkovich's health is a factor worthy of consideration, it does not tip the balance against transfer.

Plaintiffs correctly contend that it is easier for Gerber to send its representatives to New York for the purposes of this case than it would be for Plaintiffs to fly to Michigan. Plaintiffs represent that since this Court in *Linzer* denied transfer on the grounds that one of the defendants "travels frequently to New York, and [the Court found] it . . . difficult to believe that travel here for purposes of this action would pose an undue hardship," *Linzer, 904 F. Supp. at 216,* transfer should be denied here as well. However, the *Linzer* motion was denied not because of the frequency of travel to New York by one of the defendants, but because the operative facts central to the plaintiff's claim occurred largely in New York, and the core evidentiary material and critical testimonial witnesses were located in New York. *Id. at 216-17.* As noted in *Cento Group,* on plaintiff's assertion that defendant had more contacts with plaintiff's forum choice of New York than did plaintiff, making New York [*20] a convenient forum for defendant, this Court stated that "while this may be true, the test is to determine which forum is more convenient, not whether the chosen forum is impossibly inconvenient for the defendant." *Cento Group, 822 F. Supp. at 1061.*

The location of documents and ease of access to sources of proof weighs in favor of transfer. "This factor is clearly an important consideration in motions to transfer pursuant to *28 U.S.C. § 1404(a)." Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co., 734 F. Supp. 54, 58 (N.D.N.Y. 1990) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947));* see *Linzer, 904 F. Supp. at 217* (noting that "most efficient access to . . . documents and witnesses [are] factors that strongly militate in favoring litigating this case in New York").

Whatever records exist concerning the challenged decisions are located in Michigan, where the key decisions were made. Thus, transfer will facilitate access to the relevant documents and records. *See Cento Group, 822 F. Supp. at 1062; Boreal Laser Inc. v. Coherent, Inc., 1992 U.S. Dist. LEXIS 276, 22 U.S.P.Q.2D (BNA) 1559 (S.D.N.Y. 1992).*

Documents relevant [*21] to Gerber's decisions, witnesses who can testify about the decisions, and Gerber itself are all located in Michigan. Indeed, the only significant connection to New York in this case is that all of Plaintiffs' attorneys are located here. Yet this fact has little consequence to the transfer decision. *See Cento Group, 822 F. Supp. at 1061; Berry, 808 F. Supp. at 1110.* It is true that Butcher lives in New York, and Velkovich, in poor health, resides nearby in New Jersey. Nonetheless, on balance, the convenience of the wit-

Case 1:07-cv-08623-PAC   Document 39-5   Filed 12/26/2007   Page 7 of 9

Page 6
1998 U.S. Dist. LEXIS 11869, *

nesses and parties, and the location of documents favor transferring the action to Michigan.

### 2. Locus of Operative Facts

"Where the operative facts occurred is an obvious factor to consider." *Pall Corp. v. PTI Technologies, Inc., 992 F. Supp. 196, 200 (E.D.N.Y. 1998).* Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district. *See Viacom Int'l, Inc. v. Melvin Simon Prod., 774 F. Supp. 858, 867 (S.D.N.Y. 1991) (citing Computer Horizons Corp. v. Knauer, 483 F. Supp. 1272 (S.D.N.Y. 1980)).* This factor also supports the transfer to Michigan.

The principal events instigating [*22] this action were the decisions by Gerber to convert from a direct sales force to a broker sales force and to change its severance plan. The decision to outsource was made at Gerber's headquarters in Fremont, Michigan, and it is there that the effects of its implementation occurred. The decision to change Gerber's severance plan likewise was made in Michigan. The meetings in which the decision to convert the sales force was announced occurred in 11 states and the District of Columbia. New York was not among them.

Plaintiffs, pursuant to the affidavit made by Velkovich, contend that on at least one occasion in the latter half of 1997, high-level Gerber officials came to Manhattan with Piergallini to attend a meeting regarding the planning for the reduction of Gerber's sales force. This, however, has been disputed by Gerber which maintains that Velkovich is incorrect, that his affidavit is not based on personal knowledge, and that no such meeting transpired in New York.

### 3. Availability of Process To Compel Attendance of Unwilling Witnesses

Neither Gerber nor Plaintiffs have identified any witness who would be unwilling to attend the trial of this action absent the compulsion [*23] of a subpoena. Because the key witnesses mentioned by Gerber reside in or closer to Michigan, any witness unwilling to appear can be adequately represented through deposition testimony. *See Westwood Ventures, Ltd. v. Forum Fin. Group, 1997 U.S. Dist. LEXIS 6982,* No. 97 Civ. 514, *1997 WL 266970, at *5 (S.D.N.Y. May 19, 1997).*

### 4. Relative Means of the Parties

Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered. *Hernandez, 761 F. Supp. at 989; see Pall, 992 F. Supp. at 200* ("The Court may also consider . . . whether a disparity between the parties exists with respect to their relative means, such as in the case of an individual plaintiff suing a large corporation").

Granted, Plaintiffs are individuals who are suing a corporation that possesses considerably greater financial assets. However, apart from Velkovich, who has stated that transfer would be detrimental to his health, no showing has been made that litigating this action in Michigan would impose an undue hardship on the Plaintiff class. After all, of the four named Plaintiffs, only Butcher resides in New York, and Velkovich is not [*24] far in New Jersey. Yet Johnson and Thomas, from Texas and Louisiana, respectively, would need to travel regardless of a transfer. On balance, this factor does not outweigh the reasons supporting a transfer.

### 5. Forum's Familiarity With Governing Law

It is assumed that the federal courts in both this district and the Western District of Michigan are equally familiar with the legal principles necessary to resolve this case. Accordingly, this factor does not favor either party.

### 6. Weight Accorded Plaintiffs' Choice of Forum

A plaintiff's choice of forum is generally entitled to considerable weight. *See Orb, 6 F. Supp. 2d 203, 1998 U.S. Dist. LEXIS 7681, 1998 WL 262601, at *7; Westwood Ventures, 1997 U.S. Dist. LEXIS 6982, 1997 WL 266970, at *2 (citing Fontana v. E.A.R., 849 F. Supp. 212, 215 (S.D.N.Y. 1994)); Kolko v. Holiday Inns, Inc., 672 F. Supp. 713, 715 (S.D.N.Y. 1987).* Where the factors are equally balanced, the plaintiff is entitled to its choice, and the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim or where the plaintiff is a resident of the forum district. *See Orb, 6 F. Supp. 2d 203, 1998 U.S. Dist. LEXIS 7681, 1998* [*25] *WL 262601, at *7; Levitt v. State of Maryland Deposit Ins. Fund Corp., 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986); AMVEST Capital Corp. v. Banco Central, S.A., 628 F. Supp. 1258 (1986).*

However, the emphasis placed by a court on this choice "'diminishes where . . . the facts giving rise to the litigation bear little material connection to the chosen forum.'" *Westwood Ventures, 1997 U.S. Dist. LEXIS 6982, 1997 WL 266970, at *2; see Eichenholtz v. Brennan, 677 F. Supp. 198, 201 (S.D.N.Y. 1988)* (stating that "plaintiff's choice of forum is given less weight where, as here, the plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum"); *Kolko, 672 F. Supp. at 715* (noting that if the balance of several factors strongly favor defendant, plaintiff's choice may be disturbed).

In this case, because the facts giving rise to the case have no material connection to New York, many of the witnesses reside in Michigan, Gerber is located in Michigan, and all the documents relating to Gerber's decisions are located in Michigan, the deference afforded to Plaintiffs' choice of New York is minimized.

Moreover, in class actions little weight is given to the plaintiffs' [*26] choice. *See Eichenholtz, 677 F. Supp. at 202*; *Werbowsky v. American Waste Servs., 1992 U.S. Dist. LEXIS 8267*, No. 91 Civ. 6675, 1992 WL 147924, at *2 (S.D.N.Y. June 15, 1992); *Shulof v. Westinghouse Elec. Corp., 402 F. Supp. 1262, 1263 (S.D.N.Y. 1975)*. In *Eichenholtz*, the court observed that "in a class action, the named plaintiff's choice of forum is afforded little weight because in such a case, there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim." *Eichenholtz, 677 F. Supp. at 202* (citing *Koster v. Lumbermens Mut. Casualty Co., 330 U.S. 518, 524, 91 L. Ed. 1067, 67 S. Ct. 828 (1947)*).

Plaintiffs maintain that although the Second Circuit indicated that plaintiff's choice is a "less significant consideration in a . . . class action than in an individual action" in *Warrick v. General Elec. Co., 70 F.3d 736, 741 n.7 (1995)*, it nevertheless stated that plaintiff's choice of forum was "entitled to substantial consideration," *id. at 741*, and that denial of transfer would serve the convenience of a disproportionate share of class members residing in plaintiff's chosen forum. [*27] *See id. at 741 n.7*.

*Warrick*, however, differs from the case at bar. By way of background, in *Warrick*, the plaintiff class brought an action against their employer, RCA Corporation ("RCA"), RCA's parent company, General Electric Co. ("GE"), and their defined pension plans, alleging that merger of RCA's Plan into GE's Plan violated the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. §§ 1058, 1344(d)(3)*. *Id. at 737*. In deciding to accord plaintiff's choice of forum substantial weight, the court noted that:

> the putative members are or were all employees of RCA, the RCA Plan has been merged into the GE Plan, and GE's principal place of business is located in [plaintiff's] chosen forum . . . . It is thus reasonable to assume that a disproportionate share of the putative class members reside in [plaintiff's] chosen forum, and accordingly, that denial of the motion for transfer would serve the convenience of the same disproportionate share.

*Id. at 741 n.7*. Unlike *Warrick*, factors in favor of placing substantial weight to Plaintiffs' choice of forum are lacking in this case. For example, a "disproportionate" number of the putative [*28] class members do not reside in New York.

Furthermore, in relying on *Warrick*, Plaintiffs neglected to mention that denying transfer there would facilitate the testimony of some key witnesses, and the access of documents relevant to the case. As Gerber points out, in *Warrick*, the Second Circuit found that the district court improperly transferred the action by failing to consider the requirements of *§ 1404(a)* concerning the convenience of the parties and witnesses. Instead, it transferred the case because a similar case had previously been dismissed on a motion to dismiss, and the district court believed that judicial economy would be fostered by a transfer to that district, which would quickly dispose of the case, as it had the earlier one. *Id. at 737, 740-41*.

### 7. *Trial Efficiency and the Interests of Justice*

Beyond these particular concerns, however, a district court has discretion to transfer an action to where the trial would best be expedient and just. *See Red Bull Assoc. v. Best Western Int'l, Inc., 862 F.2d 963, 967 (2d Cir. 1988)*. "The relevant docket conditions of the transferor and transferee courts[,] [for example,] are relevant" to the transfer [*29] determination. *Eichenholtz, 677 F. Supp. at 202*.

It is undisputed that the total number of filings in the Southern District of New York are nearly six times greater than in the Western District of Michigan, and the median time in months from filing to trial is only 15 months in the Western District of Michigan as opposed to 24 months in this district, making it more likely that a prompt trial will occur in Michigan. *See* 1996 Federal Court Management Statistics at 48, 92. Still, judicial economy, although a relevant consideration, is insufficient on its own to support a transfer motion. *See e.g., Warrick, 70 F.3d at 740*; *Westwood Ventures, 1997 U.S. Dist. LEXIS 6982, 1997 WL 266970, at *6*.

In support of Plaintiffs' suggestion that the interest of justice will not be served if this action is transferred to Michigan, they cite *Red Bull*, where the Second Circuit affirmed the district court's refusal to transfer a civil rights case because of the potential inhibitory effect on the enforcement of civil rights laws resulting from a transfer. However, not only was *Red Bull* not a class action, but the court specifically found that the plaintiff Red Bull would likely be unable or unwilling to [*30] pursue the case at all were the motion for transfer granted. *Red Bull, 862 F.2d at 966*. In addition, plaintiffs there had "adduced evidence sufficient to persuade the district court of their role as 'private attorneys gen-

eral' carrying out important community civil rights imperatives by maintaining [the] litigation." *Id.* There has not been a similar showing here.

Plaintiffs nonetheless maintain that transfer would impede the assertion of their rights because Velkovich would be unable to travel to Michigan and the other class members would be deprived of their "point man," Butcher, who actively monitors this action, attends court proceedings, and reports on the case to the class. Additionally, Plaintiffs assert, their attorneys are all in New York.

As discussed above, Velkovich's health was considered as part of the inquiry as to the convenience of the parties. Moreover, the location of Plaintiffs' attorneys is given little, if any, weight. As to Butcher, the fact that he may wish to attend certain court proceedings that may arise in connection with motions on legal matters does not control the decision on a venue motion. It is not necessary for a plaintiff to attend such [*31] motions, the results of which can be adequately reported by counsel. The only issue insofar as convenience is concerned is attendance at trial. The convenience of Butcher is outweighed by the convenience to the majority of Gerber witnesses, Gerber itself, the location of material documents and access of evidence, and the locus of the operative events.

Finally, that this court has granted summary judgment to Plaintiffs on the issue of waiver does not militate against transfer. Although this court has devoted a fair amount of time and effort to this case, the litigation, as admitted by Plaintiffs, is at an early stage. A mere four-and-a-half months have passed since the filing of this action on March 13, 1998.

In light of the foregoing analysis and consideration of the totality of circumstances, the balance of factors tips in favor of Gerber.

### Conclusion

For the reasons set forth above, Gerber's motion to transfer this action to the Western District of Michigan is granted.

It is so ordered.

New York, N. Y.

July 29, 1998

**ROBERT W. SWEET**

**U.S.D.J.**