**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Jack A. Raisner (JR 6171)
Carmelyn P. Malalis (CM 3350)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**GETMAN LAW OFFICE**
Dan Getman (DG 4613)
Michael J.D. Sweeney (MS 7959)
Matthew Dunn (MD 1103)
Tara Bernstein (TB 7733)
9 Paradies Lane
New Paltz, New York 12561
Telephone: (845) 255-9370

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

MICHAEL CLARK, DAVID STARKMAN,
FRANCO DESIMONE, and JOHN DINISI,
individually and on behalf all others similarly
situated,

                        Plaintiffs,

     v.

ECOLAB, INC.,

                        Defendant.

**Case No. 07-8623 (DLC)**

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE
# AND CONSOLIDATE CLASS CLAIMS

# **TABLE OF CONTENTS**

Table of Authorities…………….…………………………………………………………...iii

Preliminary Statement………………….…………………………………………………1

Procedural History…………………………….………………………………………...3

Factual Background…………………………….……………………………………………4

Argument……………………….……………………………………………………6

I.      ECOLAB CANNOT DEFEAT PLAINTIFFS' WELL-PLED CLASS AND
COLLECTIVE ACTIONS BY DIVIDING PLAINTIFFS' PUTATIVE CLASS...………6

      A.      Plaintiffs Must Have an Opportunity To Engage in Discovery Regarding Their
Class and Collective Actions Before a Determination on the Merits of Class and
Collection Action Status Can Be Made………………………………………….….6

      B.      The Fact that Plaintiffs Worked in Different Ecolab Divisions Does Not Bar Class
Certification………………………………………………………………………7

II.     THE COURT SHOULD DENY ECOLAB'S MOTION TO TRANSFER THE CLAIMS
OF PLAINTIFFS CLARK AND DESIMONE…………………………………………...8

      A.      Section 1404(a) Does Not Permit the Transfer of Individual Claims…………….8

      B.      Ecolab Has Not Met Its Heavy Burden of Demonstrating that this Action Should
Be Transferred……………………………………………………………….…...……..9

            1.      Plaintiffs' Chosen Forum Is Entitled to Substantial Deference………..…..9

            2.      Defendant Has Failed To Show by Clear and Convincing Evidence that
Transfer to North Carolina Is Warranted………………………………...11

                  a.      Location of witnesses and documents, and ease of access to
sources of proof militate against transferring the case to North
Carolina………………………………………………………………...12

                  b.      The convenience of the parties does not favor North Carolina,
especially because Ecolab has considerable means……………...16

                  c.      The locus of operative facts is not in North Carolina…………….17

                  d.      The current forum's familiarity with the governing law and interest
weigh against transfer…………….………………………………...18

i

     C.     The Creation of a New Action in North Carolina Raises Practical Concerns….................19

III.    ECOLAB HAS FAILED TO PRESENT A VIABLE THEORY UNDER WHICH PLAINTIFFS COULD BE REMOVED FROM THIS CASE AND DROPPED INTO *MASSON*……………..20

IV.    IN THE ALTERNATIVE, THE COURT SHOULD HOLD DEFENDANT'S MOTION IN ABEYANCE OR DISMISS IT WITHOUT PREJUDICE PENDING DISCOVERY  ..………21

Conclusion…………………………………………………………………………...……..22

# TABLE OF AUTHORITIES

## CASES

*800-Flowers, Inc. v. Intercont'l Florist, Inc.*,
  860 F. Supp.  128 (S.D.N.Y. 1994)............................................................................20

*Alston v. New York City Transit Auth.*,
  97 Civ. 1080, 1998 U.S. Dist. LEXIS 11833 (S.D.N.Y. Aug. 3, 1998) ....................20

*Albert Fadem Trust v. Duke Energy Corp.*,
  214 F. Supp. 2d 341 (S.D.N.Y. 2002).......................................................................14

*Alexander & Alexander, Inc. v. Muldoon & Co.*,
  685 F. Supp. 346 (S.D.N.Y. 1988)..............................................................................9

*Ansoumana v. Gristede's Operating Corp.*,
  201 F.R.D. 81 (S.D.N.Y. 2001) ................................................................................18

*Barnhart v. Safeway Stores, Inc.*,
  No. S-92-0803, 1992 U.S. Dist. LEXIS 22572 (E.D. Cal. Dec. 14, 1992)...................7

*Bodner v. Banque Paribas*,
  202 F.R.D. 370 (E.D.N.Y. 2000) ................................................................................7

*Bruner v. Sprint/United Mgmt. Co.*,
  CV No. 07-2164, 2007 U.S. Dist. LEXIS 62259 (D. Kan. Aug. 22, 2007)................13

*Brzychnalski v. UNESCO, Inc.*,
  35 F. Supp. 2d 351 (S.D.N.Y. 1999)............................................................................1

*Cavalo Growers of Cal. v. Generali Belgium*,
  632 F.2d 963 (2d Cir. 1980)......................................................................................15

*CBS Broad. v. Bridgestone Multimedia Group*,
  97 Civ. 6408, 1998 U.S. Dist. LEXIS 16659 (S.D.N.Y. 1998) ..................................22

*Chateau de Ville Products, Inc. v. Tams-Witmark Music Library, Inc.*,
  586 F.2d 962 (2d Cir. 1978).......................................................................................7

*Connors v. Lexington Ins. Co.*,
  666 F. Supp. 434 (E.D.N.Y. 1987) ...........................................................................10

*Controlotron Corp. v.  Perry Printing Corp.*,
  Civ. No. 90-356, 1990 U.S. Dist. LEXIS 7629 (D.N.H. June 19, 1990)...............21, 22

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000).....................................................................................20

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006).................................................................................11, 12

*DiRienzo v. Philip Servs. Corp.*,
    294 F.3d 21 (2d Cir. 2002).....................................................................................10

*Doninger v. Pac. Nw. Bell, Inc.*,
    564 F.2d 1304 (9th Cir. 1977) ...................................................................................7

*Duchene v. Michael L. Cetta, Inc.*,
    244 F.R.D. 202 (S.D.N.Y. 2007) .................................................................................1

*Earley v. BJ's Wholesale Club, Inc.*,
    Case No. 06-3529, 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007)..............10

*Editorial Musical Latino Americana, S.A. v. Maritime Int'l Records, Inc.*,
    829 F. Supp. 62 (S.D.N.Y. 1993)...............................................................................11

*EEOC v. Local 638*,
    71 Civ. 2877, 2004 U.S. Dist. LEXIS 21682 (S.D.N.Y. Oct. 28, 2004) .....................8

*Funke v. Life Fin. Corp.*,
    No. 99-CV 11877, 2003 U.S. Dist. LEXIS 1226 (S.D.N.Y. Jan. 28, 2003)...............10

*Garber v. Randell*,
    477 F.2d 711 (2d Cir. 1973).....................................................................................21

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990).......................................................................................8

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947)....................................................................................................9

*Hill v. Golden Corral Corp.*,
    No. 98-CV-7872, 1999 U.S. Dist. LEXIS 7994 (E.D.N.Y. May 21, 1999) ..................9

*In re Am. Cont'l Corp.*,
    102 F.3d 1524 (9th Cir. 1996) ..................................................................................21

*In re Frontier Ins. Group, Inc. Sec. Litig.*,
    172 F.R.D. 31 (E.D.N.Y. 1997)...................................................................................8

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001)........................................................................19

*Johnson v. Big Lots Stores, Inc.*,
  No. 04-3201, 2005 U.S. Dist. LEXIS 2221 (E.D. La. Feb. 10, 2005)........................10

*Johnson v. Manhattan Ry. Co.*,
  289 U.S. 479 (1933)................................................................................21

*Lindsay v. Gov't Employees Ins. Co.*,
  448 F.3d 416 (D.C. Cir. 2006)....................................................................1

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998)..................................................................................21

*Marisol A. ex rel. Forbes v. Giuliani*,
  126 F.3d 372 (2d Cir. 1997)......................................................................8

*Marketing/Trademark Consultants, Inc. v. Caterpillar Inc.*,
  No. 98-CV-2570, 1998 U.S. Dist. LEXIS 12301 (S.D.N.Y. Aug. 10, 1998)..............19

*Martens v. Thomann*,
  273 F.3d 159 (2d Cir. 2001)......................................................................20

*Mascol v. E & L Transp., Inc.*,
  CV-03-3343, 2005 U.S. Dist. LEXIS 32634 (E.D.N.Y. June 30, 2005).....................1

*Masson v. Ecolab, Inc.*
  04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 18, 2005)...................18

*McLaughlin v. Liberty Mut. Ins. Co.*,
  224 F.R.D. 304 (D. Mass. 2004)..................................................................1

*Mije Assocs. v. Halliburton Servs.*,
  552 F. Supp. 418 (S.D.N.Y. 1982)...............................................................13

*O'Hopp v. ContiFinancial Corp.*,
  88 F. Supp. 2d 31 (E.D.N.Y. 2000) ............................................................10, 11

*Onyeneho v. Allstate Ins. Co.*,
  466 F. Supp. 2d 1 (D.D.C. 2006)................................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)................................................................................22

*Oubre v. Clinical Supplies Mgmt., Inc.*,
    No. 05-CV-2062, 2005 U.S. Dist. LEXIS 28877 (S.D.N.Y. Nov. 17, 2005)..............17

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) .................................................................................20

*Parker v. Time Warner Entm't Co.*,
    331 F.3d 13 (2d Cir. 2003)......................................................................................7

*Pittman v. E. I. duPont de Nemours & Co.*,
    552 F.2d 149 (5th Cir. 1977) ...................................................................................7

*Primavera Familienstiftung v. Askin*,
    173 F.R.D. 115 (S.D.N.Y. 1997) .............................................................................21

*Roberti v. Longworth*,
    164 F. Supp. 2d 395 (S.D.N.Y. 2001)......................................................................21

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*,
    657 F. Supp. 1040 (S.D.N.Y. 1987)........................................................................16

*Saccoccio v. Relin, Goldstein & Crane, LLP*,
    No. 06-CV-14351, 2007 U.S. Dist. LEXIS 33145 (S.D.N.Y. May 7, 2007) ..11, 12, 18

*S-FER Int'l, Inc. v. Paladion Partners, Ltd.*,
    906 F. Supp. 211 (S.D.N.Y. 1995)..........................................................................15

*Torres v. Gristede's Operating Corp.*,
    04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006).....................1

*Total Filtration Servs. v. A.T. Kearney, Inc.*,
    No. 3:06-0624, 2006 U.S. Dist. LEXIS 90474 (D. Tenn. Dec. 13, 2006)..................22

*Trinidad v. Breakaway Courier Sys., Inc.*,
    05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007).........................1

*Westerfield v. Wash. Mut. Bank*,
    06-CV-2817, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007).......................1

*Wiwa v. Royal Dutch Petroleum Co.*,
    226 F.3d 88 (2d Cir. 2000)........................................................................................9

*Wright v. Stern*,
    01 Civ. 4437, 02 Civ. 4699, 2003, U.S. Dist. LEXIS 11589 (S.D.N.Y. July 9,
    2003) .....................................................................................................................8

*Wyndham Assocs. v. Bintliff*,
   398 F.2d 614 (2d Cir. 1968).................................................................................9, 19

## FEDERAL STATUTES

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.*................................................. *passim*

29 U.S.C. § 216(b) .....................................................................................................7

28 U.S.C. § 1391(b) ..................................................................................................11

28 U.S.C. § 1404(a) ...............................................................................................8, 9

## STATE STATUTES

New York Labor Law Article 19, §§ 650 *et seq.*........................................................ *passim*

## FEDERAL RULES

Federal Rule of Civil Procedure 26(a) ....................................................................12

Federal Rule of Civil Procedure 30(b)(6) ..............................................................15

Federal Rule of Civil Procedure 42 ........................................................................21

**Preliminary Statement**

This case is a standard "hybrid" wage and hour action to recover unpaid overtime wages for nationwide violations of the Fair Labor Standards Act ("FLSA") and violations of four different state wage and hour laws, including the New York Labor Law ("NYLL").[1]  Ecolab, Inc. ("Defendant" or "Ecolab") is a $5 billion, multi-national corporation, a global leader in cleaning and sanitizing services.  Plaintiffs are the employees who provide those services to Ecolab's customers.  The four Named Plaintiffs bring their overtime claims on behalf of workers in several of Ecolab's business divisions, all of whom Ecolab subjected to the same unlawful policy:  requiring long overtime hours without overtime pay.  Thirty-three other workers have already joined the case.

Ecolab seeks to pluck away the individual and class claims of two Named Plaintiffs and move them to the Middle District of North Carolina, despite the fact that no Plaintiff lives there or works there, and despite the fact that Ecolab is headquartered in St. Paul, Minnesota.  (Def.

---

[1]     It is well settled by courts in the Second Circuit that FLSA collective actions and state law class actions may proceed side by side in one representative action because they promote efficiency, judicial economy, and the FLSA's remedial goal of preventing nonpayment of wages. *See e.g.*, *Lindsay v. Gov't Employees Ins. Co.*, 448 F.3d 416 (D.C. Cir. 2006); *Westerfield v. Wash. Mut. Bank*, 06-CV-2817, 2007 U.S. Dist. LEXIS 54830 (E.D.N.Y. July 26, 2007) (denying motion to dismiss class claims after authorizing collective action notice); *Trinidad v. Breakaway Courier Sys., Inc.*, 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914 (S.D.N.Y. Jan. 12, 2007) (granting plaintiffs' motion for conditional certification under the FLSA and certification of a Rule 23 New York state law class action); *Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202 (S.D.N.Y. 2007) (certifying a New York state law class alongside a FLSA collective action); *Torres v. Gristede's Operating Corp.*, 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) (granting class certification of NYLL claims and collective action status for FLSA claims); *Mascol v. E & L Transp., Inc.*, CV-03-3343, 2005 U.S. Dist. Lexis 32634 (E.D.N.Y. June 30, 2005) (certifying a Rule 23 New York state law class action in suit in which FLSA collective action had already been certified); *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) (FLSA collective action and Massachusetts class action); *Brzychnalski v. UNESCO, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999) (certifying a Rule 23 New York state law class and a FLSA collective action together).

1

Mot.[2] at 7.)  At the same time, Ecolab concedes that the individual and class claims of the other two Named Plaintiffs – which are identical to the claims of the Named Plaintiffs it seeks to transfer – should remain in the Southern District of New York.

At its essence, Ecolab's motion is an impermissible preemptive strike on Plaintiffs' proposed class and collective actions before Plaintiffs move for class or collective action certification, before Plaintiffs have had the opportunity to take any discovery, and before the Court can consider the relevant evidence.  Ecolab essentially asks the Court to ignore the Plaintiffs' well-pled class and collective action allegations and dismantle Plaintiffs' case before it gets underway.  Although Ecolab claims that the Court should grant this motion for the convenience of the parties, transfer would only benefit Ecolab and its counsel, Littler Mendelson P.C., who, unlike Plaintiffs' counsel, has an office in North Carolina.  Littler Mendelson Offices, http://www.littler.com/offices/ (last visited Jan. 8, 2008).

The Court should not allow the complicated situation Ecolab seeks to create.  First, Ecolab has not moved to sever the claims of the two Plaintiffs it seeks to transfer and cannot move to transfer only a portion of a lawsuit.  Second, even if Ecolab could transfer only a portion of the claims (which it cannot), transfer would (a) force some Plaintiffs to litigate in a forum where none of them live, which none of them chose, and where only defense counsel have offices; (b) not provide greater ease of access to documents relevant to Plaintiffs' overtime claims; (c) shift convenience to Ecolab at the expense of Plaintiffs; (d) separate this case from two other nationwide collective actions pending against Ecolab in this District; and (e) create multiple proceedings with the risk of inconsistent results by forcing Plaintiffs to litigate the same

---

[2]     Citations to "Def. Mot." refer to Defendant's Memorandum of Law in Support of Motion To Transfer Venue and Consolidate Certain Plaintiffs with First Filed Action, filed December 26, 2007.

claims in two districts simultaneously.  Finally, while Ecolab admits that the claims of two

Named Plaintiffs are properly in this District, it seeks to move their claims to another courtroom

without identifying the procedural mechanism that authorizes such a transfer.

The Court should deny Ecolab's motion in its entirety[3] and allow this case to proceed

here, Plaintiffs' chosen forum.  Alternatively, the Court should hold Ecolab's motion in abeyance

until Plaintiffs have had adequate discovery to contest it.

## Procedural History

Plaintiffs filed this lawsuit on October 4, 2007 and designated it as "related" to *Masson*

and *English*, two other lawsuits pending in this District before The Honorable Paul A. Crotty.

(*See* Declaration of Justin M. Swartz in Further Opposition to Defendant's Motion To Transfer

Venue and Consolidate Class Claims ("Swartz Decl.") Exs. 1 (Civil Cover Sheet) and 2 (Email

from J. Swartz to M. Ovalles, dated Oct. 15, 2007).)  In a position inconsistent with the one it

takes in its motion, Ecolab objected to Plaintiffs' related case designation.  (*See id.* Ex. 3 (Email

from J. Brecher to M. Sweeney, dated Oct. 17, 2007).)  Judge Crotty declined to accept the

assignment.[4]  The Clerk of the Court then assigned the case to this Court.

Plaintiffs filed their First Amended Class Action Complaint ("1st Am. Compl.") on

December 4, 2007 and served it on December 6, 2007.  It includes individual, class, and

collective claims under the FLSA and the wage and hour laws of several states.  To date, 33

---

[3]    Plaintiffs do not object to making this action and all of Plaintiffs' claims, *in toto*, a related case to *Masson v. Ecolab, Inc.*, 04 Civ. 4488 ("*Masson*") and *English v. Ecolab, Inc.*, 06 Civ. 5672 ("*English*"), consistent with their prior request, if the *Masson* and *English* Court is willing to take them.  (*See infra* Procedural History.)

[4]    At the time Judge Crotty declined to make this case related to *Masson* and *English,* Michael Clark, a Kay division employee, was the only plaintiff.  This case now involves plaintiffs who worked in the Kay division, the Institutional division (like the *Masson* plaintiffs), the Pest Elimination division (like the *English* plaintiffs), and other Ecolab divisions.

individuals ("Opt-in Plaintiffs") have joined this case by filing "Consent to be a Party Plaintiff" forms.  (Swartz Decl. ¶ 12.)

On January 3, 2008, Plaintiffs notified Ecolab that they will seek leave to file a Second Amended Class Action Complaint, which they are in the process of drafting.  (Swartz Decl. ¶ 17 and Ex. 5 (Email from J. Swartz to A. Voss, dated Jan. 3, 2008).)[5]  Though Plaintiffs asked Defendant to withdraw this motion pending receipt of Plaintiffs' proposed Second Amended Complaint, Defendant refused to do so.  (*Id.* ¶ 18.)

### Factual Background

Plaintiffs are current and former employees of Ecolab who serve Ecolab's customers throughout the United States.  The Opt-In Plaintiffs work in various states including New York, California, Hawaii, Alaska, Rhode Island, Connecticut, New Jersey, Colorado, Texas, Utah, Michigan, and Florida.  (Swartz Decl. ¶ 12.)  Plaintiffs allege that they are similarly situated to the Opt-In Plaintiffs and the putative class members.  Plaintiffs, the Opt-In Plaintiffs, and the putative class members serviced Ecolab's customers at the customers' premises, drove vehicles weighing less than 10,001 pounds, and regularly worked in excess of 40 hours per workweek without proper overtime premium compensation.  (*See e.g.,* 1st Am. Compl. ¶¶ 1, 2, 11, 14, 17, 20, 37, 43, 47, 53, 57, 63, 67, 73, 77, 79.)

Ecolab is the world's leading developer of sanitation products.  (*See* Swartz Decl. Ex. 8 (Ecolab Business Overview,http://www.ecolab.com/Publications/Factbook/businessoverview.pdf (last visited Jan. 15, 2008) at Description of Business).)  It is a large multinational company comprised of ten business divisions including:  Institutional, Kay, Pest Elimination, Food &

---

[5]    Plaintiffs expect that their Second Amended Class Action Complaint will not add new substantive factual allegations, but will simply add additional putative class representatives who reside in New York, as well as putative class representatives from other states and their state law claims.  (Swartz Decl. ¶ 16.)

Beverage, Healthcare, GCS Service, Textile Care, Vehicle Care, and Water Care Services.[6]

"With over $5 billion in global sales, Ecolab is the world's leading provider of cleaning, food

safety and health protection products and services for the hospitality, foodservice, healthcare and

industrial markets."  (Swartz Decl. Ex. 9 (Ecolab Company Profile, http://www.ecolab.com/

CompanyProfile/ (last visited Jan. 15, 2008)).)

      Though some Ecolab divisions may have existed as separate companies years ago, before

being acquired by Ecolab (Def. Mot. at 3 (Kay was a separate "privately held" "North Carolina-

based company" before Ecolab acquired it in 1994)), Ecolab now manages all of its divisions

under the same corporate structure and Board of Directors (Swartz Decl. Ex. 10 (Ecolab 2006

ANNUAL REPORT, Board of Directors and Corporate Officers, http://www.ecolab.com/

Investor/Annual_Reports.asp (last visited Jan. 15, 2008))).  That all of Ecolab's business

divisions are considered parts of the same company is confirmed by each of Ecolab's annual

reports for the past 10 years, which also include a single end-of-the-year balance sheet

indistinguishable by division.  (*See* Swartz Decl. Ex. 7 (Links to Ecolab's Annual Reports for

1996-2006, http://www.ecolab.com/Investor/Annual_Reports.asp (last visited Jan. 8, 2008)).)

---

[6]     A description of Ecolab's business and divisions is available on its website at:
http://www.ecolab.com/Investor/Annual_Reports.asp (follow Description of Business and
Financial Highlights under 2006 ANNUAL REPORT), at Swartz Decl. Ex. 6.

     Ecolab's website lists nine divisions, though Defendant makes reference to ten divisions
in its motion (*see* Def. Mot. at 3) and in a declaration signed by one of Ecolab's Senior Human
Resources Representatives, Nancy Hayes (Declaration of Andrew J. Voss in Support of
Defendant's Motion To Transfer Venue and Consolidate Certain Plaintiffs with First Filed
Action ("Voss Decl."), filed on Dec. 26, 2007, Ex. B (Hayes Decl. ¶ 3)).  Since this is the first
time Ecolab has disclosed Ms. Hayes as a witness, and Plaintiffs have not had an opportunity to
depose her or take any other discovery on Ecolab's divisions, the exact number of divisions is
unknown to Plaintiffs.

The original Kay Chemical Company, which Ecolab acquired in 1994, is not a defendant in this case and Ecolab did not implead it in the Answer.[7]

**Argument**

**I.    ECOLAB CANNOT DEFEAT PLAINTIFFS' WELL-PLED CLASS AND COLLECTIVE ACTIONS BY DIVIDING PLAINTIFFS' PUTATIVE CLASS.**

   **A.    Plaintiffs Must Have an Opportunity To Engage in Discovery Regarding Their Class and Collective Actions Before a Determination on the Merits of Class and Collection Action Status Can Be Made.**

   Plaintiffs bring their overtime claims on their own behalf and as putative class and collective actions on behalf of workers from several Ecolab divisions, including, but not limited to, those from which Opt-In Plaintiffs already exist – Kay, Institutional, Pest Elimination, Service Solutions, and GCS Service.  (*See* 1st Am. Compl.; Swartz Decl. ¶ 12.)  Plaintiffs allege that Ecolab's unlawful policies and practices affect these workers the same way, regardless of their division.  (*See* 1st Am. Compl.)  There has been no discovery regarding Plaintiffs' well-pled class and collective allegations.  (Swartz Decl. ¶ 15.)

   Granting Ecolab's motion to extract Plaintiffs Clark and Desimone and transfer their claims to the Middle District of North Carolina based on one arbitrary characteristic (that they worked in Ecolab's Kay division), would effectively be determining that Plaintiffs' class and collective allegations are without merit before Plaintiffs can take the discovery necessary to prove them or move for certification.  Now is not the time for the Court to decide this issue.

   Plaintiffs are entitled to discovery to support their class and collective claims, including their claims that employees who worked in Ecolab's Kay division are proper members of a certified class and collective.  Any determination regarding the merit of Plaintiffs' class and

---

[7]    Defendant mentions Kay Chemical Company in its motion.  (Def. Mot. at 1.)  Defendant's argument that this case should be transferred solely for the convenience of a non-party is nonsensical.

collective allegations at this point would be premature and inappropriate. *See Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) (a district court "should defer decisions on certification pending discovery if the existing record is inadequate for resolving the relevant issues"); *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 21 (2d Cir. 2003) (reversing premature denial of class certification because the district court had improperly "precluded any class discovery and even the filing of a motion for class certification"); *Bodner v. Banque Paribas*, 202 F.R.D. 370, 373 (E.D.N.Y. 2000) ("discovery on the merits . . . is essential to determining whether class certification is appropriate").[8]  After discovery, a full briefing, and a class certification hearing, Plaintiffs will demonstrate that Ecolab's policy and practice of denying overtime pay to hundreds of workers across Ecolab's business divisions present common issues that satisfy the requirements of Rule 23 and 29 U.S.C. § 216(b).

**B.      The Fact that Plaintiffs Worked in Different Ecolab Divisions Does Not Bar Class Certification.**

Even if class certification discovery was complete, and Plaintiffs' motion for class certification was before the Court, Ecolab's arguments that this class should be separated and the case dismissed would fail.  The fact that class members worked for different divisions of the same corporate employer does not require dismissal because individual factual questions do not

---

[8]      *See also, Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1312-13 (9th Cir. 1977) ("under some circumstances the failure to grant discovery before denying class treatment is reversible error"); *Pittman v. E. I. duPont de Nemours & Co.*, 552 F.2d 149, 150 (5th Cir. 1977) ("Of course, a certain amount of discovery is essential in order to determine the class action issue and the proper scope of a class action. The plaintiff is entitled to some leeway in attempting to define the proper parameters of his proposed class."); *Barnhart v. Safeway Stores, Inc.*, No. S-92-0803, 1992 U.S. Dist. LEXIS 22572, at **4, 9 (E.D. Cal. Dec. 14, 1992) ("Many courts . . . have recognized that discovery is often necessary to determine if a class is maintainable . . . .  It is this court's duty to permit the parties to give the district court all information that the district court might find relevant in making a class action determination." (emphasis in original)).

bar class certification.  *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner &*
*Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[T]he mere existence of individualized factual
questions with respect to the class representative's claim will not bar class certification."); *see*
*also In re Frontier Ins. Group, Inc. Sec. Litig.,* 172 F.R.D. 31, 41 (E.D.N.Y. 1997) ("The rule
barring certification of plaintiffs subject to unique defenses is not rigidly applied in this
Circuit[.]" (citation omitted)).  Courts regularly certify classes featuring far more factual and
legal variance among class members.  *See Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372,
377 (2d Cir. 1997) (affirming the district court's conclusion that the "unique circumstances" of
the plaintiffs were not a bar to class certification because the evidence showed that defendants'
conduct "form[ed] a pattern of behavior that commonly affect[ed] all of the proposed class
members"); *see also Wright v. Stern*, 01 Civ. 4437, 02 Civ. 4699, 2003, U.S. Dist. LEXIS 11589,
at **15-17 (S.D.N.Y. July 9, 2003) (rejecting defendants' argument that the plaintiffs failed to
meet Rule 23's commonality requirement because the class "members' employment var[ied]
widely according to civil service classification, location, and collective bargaining agreement");
*EEOC v. Local 638*, 71 Civ. 2877, 2004 U.S. Dist. LEXIS 21682, at **19-20 (S.D.N.Y. Oct. 28,
2004) ("Courts within the Second Circuit have repeatedly certified
classes . . . despite differing factual circumstances of the class members' claims.").

## II.    THE COURT SHOULD DENY ECOLAB'S MOTION TO TRANSFER THE CLAIMS OF PLAINTIFFS CLARK AND DESIMONE.

### A.    Section 1404(a) Does Not Permit the Transfer of Individual Claims

Ecolab seeks to transfer a unilaterally carved-out portion of this case from this District to
the Middle District of North Carolina and invokes a procedural mechanism that does not allow it
to do so.  As the basis for its motion, Ecolab invokes Section 1404(a) of Title 28 of the United
States Code, which provides that "for the convenience of the parties and witnesses, in the interest

of justice, a district court may transfer any <u>civil action</u> to any other district or division where it might have been brought."  28 U.S.C. § 1404(a) (emphasis added).  Section 1404(a) does not permit courts to transfer only part of an action.  *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *Alexander & Alexander, Inc. v. Muldoon & Co.*, 685 F. Supp. 346, 351 (S.D.N.Y. 1988).  Ecolab has not moved to sever the claims of Plaintiffs Clark and Desimone, and thus, its motion should be denied on this basis alone.  *See Alexander & Alexander*, 685 F. Supp. at 351 (declining to consider whether severance is warranted where the parties failed to address the issue on motion for transfer).[9]

### B.    Ecolab Has Not Met Its Heavy Burden of Demonstrating that this Action Should Be Transferred.

#### 1.    Plaintiffs' Chosen Forum Is Entitled to Substantial Deference.

Even assuming that Section 1404(a) permits the transfer of individual claims (it does not), Ecolab has not met its burden to show that Plaintiffs Clark's and Desimone's claims should be transferred.  Though "motions for transfer lie within the broad discretion of the district court," this Court "must give substantial consideration to [Plaintiffs'] choice of venue."  *Hill v. Golden Corral Corp.*, No. 98-CV-7872, 1999 U.S. Dist. LEXIS 7994, at **6-7 (E.D.N.Y. May 21, 1999).  The U.S. Supreme Court, as well as the courts of this Circuit, has recognized that a plaintiff's choice of forum is entitled to significant weight and will be disturbed only in rare circumstances.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quoting *Gilbert*).

---

[9]    Even if Ecolab had moved to sever, it has failed to show that the interests of justice favor severing and transferring the claims.  (*See infra* Section II.B.)

This well-recognized deference to plaintiffs' choice of forum also applies in cases pled as class actions and other representative actions.[10] *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002); *see also Funke v. Life Fin. Corp.*, No. 99-CV 11877, 2003 U.S. Dist. LEXIS 1226, at \*\*10-11 (S.D.N.Y. Jan. 28, 2003) ("[A]s long as the [plaintiffs'] choice [of forum] was for legitimate reasons, it is to be respected.").

Ecolab also ignores the fact that Plaintiffs plead this case as an FLSA collective action, as well as a Rule 23 class action. Like Ecolab, the defendant in *Onyeneho v. Allstate Ins. Co.* asserted that "less deference is due to a plaintiff's choice of forum in the context of a nationwide class action." 466 F. Supp. 2d 1, 6 n.2 (D.D.C. 2006). The court rejected that argument:

> Several courts have noted that the opt-in structure of collective actions under section 216(b) of the FLSA strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action.

*Id.* (quoting *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2005 U.S. Dist. LEXIS 2221, at \*10 (E.D. La. Feb. 10, 2005)). Transferring Plaintiffs' claims would not only thwart Congress's intent to "give plaintiffs considerable control over the bringing of a FLSA action," *id.*, but it also would undermine the intent of the four Named Plaintiffs and 33 Opt-in Plaintiffs who already are part of this case (*see* Swartz Decl. ¶ 12). Proper deference should be accorded to Plaintiffs' and the Opt-in Plaintiffs' choice of venue, and the Court should deny Defendant's motion.

---

[10]     The cases Defendant cites for the proposition that a class or representative plaintiff's choice of forum is entitled to less weight are easily distinguishable. (Def. Mot. at 12.) In *Earley v. BJ's Wholesale Club, Inc.,* Case No. 06-3529, 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007), none of the plaintiffs resided in this District and the named plaintiff himself sought to transfer the case to another district court. *Id*. at \*\*1-2, 5-6. In *O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31 (E.D.N.Y. 2000), the court gave less deference to the plaintiffs' forum choice where there was virtually no connection at all between the plaintiffs and their chosen forum, and the plaintiffs had already filed three related cases in the district to which defendants sought to transfer the action. *Id*. at 35-36. In *Connors v. Lexington Ins. Co*., 666 F. Supp. 434 (E.D.N.Y. 1987), the plaintiffs themselves sought the transfer to another district in which two nearly identical cases were pending. *Id*. at 453-55.

### 2. Defendant Has Failed To Show by Clear and Convincing Evidence that Transfer to North Carolina Is Warranted.

Because the FLSA does not contain any special venue provision, the general federal venue statute applicable to federal question cases, 28 U.S.C. § 1391(b), applies. This statute allows venue in any judicial district where a defendant "resides," defined as any district in which defendant is subject to personal jurisdiction, or any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Defendant is subject to personal jurisdiction in the Southern District of New York because it maintains an office in New York City (Defendant's Answer and Statement of Affirmative Defenses to Plaintiffs' First Amended Class Action Complaint ("Answer") ¶ 23), and admittedly does business in this district (*Id.* ¶ 36).

In arguing for transfer of venue, Ecolab, as the moving party, has the "significant burden" of demonstrating by "clear and convincing" evidence that transferring any of this case is in the best interests of the litigation. *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993). As this Court noted in a recent decision, in assessing what is in the best interests of the litigation, courts consider the following factors in addition to plaintiff's choice of forum (*see supra* Section II.B.1.): (1) the location of witnesses and documents, which includes the "convenience of witnesses," "location of relevant documents and relative ease of access to sources of proof," and "availability of process to compel the attendance of unwilling witnesses;" (2) "the convenience of the parties" and "relative means of the parties;" and (3) "the locus of operative facts[.]" *Saccoccio v. Relin, Goldstein & Crane, LLP*, No. 06-CV-14351 (DLC), 2007 U.S. Dist. LEXIS 33145, at *3 (S.D.N.Y. May 7, 2007) (citing *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir. 2006)).[11]

---

[11]    Though Defendant relies on a list of factors used by an Eastern District of New York court in 2000 (Def. Mot. at 12 (citing *O'Hopp*, 88 F. Supp. 2d at 34), we believe that the

Defendant has failed to meet its heavy burden of showing that, on balance, North Carolina is more convenient for the parties and witnesses than New York and that justice would be furthered by transferring this action to the Middle District of North Carolina in Greensboro.

> **a.**    **Location of witnesses and documents, and ease of access to sources of proof militate against transferring the case to North Carolina.**

Ecolab contends that North Carolina is more convenient because of "[a] list of key witnesses located in Greensboro . . . ." (Def. Mot. at 8; Voss Decl. Ex. A (Johnson Decl. ¶ 11).) First, because the parties have not yet engaged in any discovery – the parties have not even exchanged initial disclosures pursuant to Rule 26(a) – regarding the identities and/or locations of Defendant's witnesses, Ecolab's assertion is speculative at best. Ecolab credits knowledge of its purported "key witnesses" to Stephanie Johnson, a Human Resources Manager, whom Ecolab had not identified as a witness until submitting her declaration as part of its motion papers. However, Plaintiffs have had no opportunity to depose Ms. Johnson, cross examine her on her selections, or test her credibility. Second, even if the Court were to credit Defendant's assertion that there are witnesses in North Carolina, its assertion that those witnesses are somehow "key" to Plaintiffs' overall action is undermined by the fact that those witnesses would be able to testify only regarding the claims of class members who worked in Kay, just one of Ecolab's ten divisions.[12]  (*See* Def. Mot. at 3.)  Even if Ecolab is correct that most witnesses and documents

---

factors used by the Second Circuit and by Your Honor, more recently in 2007, are the appropriate factors to consider in this analysis.  *See Saccoccio*, 2007 U.S. Dist. LEXIS 33145, at *3 (citing *D.H. Blair & Co.,* 462 F.3d at 106-07).

[12]    Though discovery in this case has not yet begun, a cursory look at the facts shows that Ecolab's bald assertion that Kay is a completely separate company is unfounded.  Ecolab admits that Kay was bought by Ecolab in 1994 (Def. Mot. at 3), and is now a division of Ecolab (*see* Swartz Decl. Ex. 6 (2006 ANNUAL REPORT Description of Business and Financial Highlights)).  In fact, each of Ecolab's annual reports for the past 10 years shows Kay as a division of Ecolab and includes a single end-of-the-year balance sheet indistinguishable by

are located outside the Southern District of New York, the same is likely true for the Middle

District of North Carolina. *See Bruner v. Sprint/United Mgmt. Co.*, CV No. 07-2164, 2007 U.S.

Dist. LEXIS 62259, at **7-8 (D. Kan. Aug. 22, 2007) (in a FLSA collective action, denying

defendants' motion to transfer venue where alleged collective involved "thousands of . . .

potential witnesses" at various worksites "scattered around the country").

  Since there has been no discovery, it is impossible to gauge what percentage of all

putative class members worked in Ecolab's Kay division, though it may be instructive to note

that Ecolab's 2006 Annual Report shows that Kay "Sales and Service Associates" accounted for

only five percent (355 employees) of all such Ecolab employees across all ten of Ecolab's

divisions (7,025 employees in total).  (Swartz Decl. Ex. 6 (2006 ANNUAL REPORT

Description of Business and Financial Highlights).)  Institutional "Sales and Service Associates"

accounted for over 46 percent (3,245 associates).  (*Id.*)  Furthermore, it is difficult to imagine

how "former executives of Kay Chemical who were with the Company before Ecolab purchased

it in 1994" – *i.e.,* people completely unaffiliated with Defendant or Plaintiffs, whose connection,

if any, to a predecessor company was more than 10 years before any of the class periods alleged

in this action – could be considered "key" to the case before this Court.

  In contrast to North Carolina, New York is a convenient forum for witnesses in this

litigation who are indisputably "key" – the Plaintiffs.  The four Named Plaintiffs, who are

---

division.  (*See* Swartz Decl. Ex. 7 (Links to Ecolab's Annual Reports for 1996-2006,
http://www.ecolab.com/Investor/Annual_Reports.asp (last visited Jan. 8, 2008)).)  Kay is not a
named defendant in this action and where it is headquartered is not of primary importance to this
action.

  Should the Court decide there may be merit to Defendant's position that Ecolab's Kay
division and Ecolab are "two separate companies," Plaintiffs are entitled to discovery to
determine whether this assertion is relevant and/or true.  *Mije Assocs. v. Halliburton Servs.*, 552
F. Supp. 418, 419 n.2 (S.D.N.Y. 1982) (dismissing defendants' motion to transfer as premature
where the parties had not yet engaged in any discovery with respect to the motion).

13

undoubtedly key witnesses, have all chosen the Southern District of New York as the forum in which to pursue their claims. Inherent in their choice is their assertion that New York is a convenient forum for them. In fact, John Dinisi, the Named Plaintiff seeking to represent the New York class, worked for Ecolab in New York and lives in New York. (*See* Swartz Decl. ¶ 13.) 33 Opt-in Plaintiffs, two of whom reside in New York, have also chosen New York as a convenient forum. It is likely that other proposed class and collective members will reside in New York. (*See id.*) Defendant maintains an office in New York City (Answer ¶ 23), and does business in the Southern District of New York (*Id.* ¶ 36). Other potential witnesses that may reside in New York include the managers that supervised the hours worked in the New York work locations, and employees that witnessed the overtime work and the managers' acknowledgement of overtime work completed by the plaintiffs for the benefit of Ecolab. (*See* Swartz Decl. ¶ 14.)

Furthermore, Ecolab has not made any showing that there are "unwilling" witnesses that can be compelled more easily from North Carolina than from New York. *See Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 344 (S.D.N.Y. 2002) ("While defendants contend that there 'may be' witnesses whose attendance in a New York litigation this Court would be unable to compel, they offer this as a mere hypothetical with no evidence in support.") In fact, the only witnesses actually identified by Defendant are its own witnesses, who are Ecolab employees, and would not need to be "compelled." (Def. Mot. at 8-9.)

Because this is a nationwide action, no one forum will be perfectly convenient for all interested parties and witnesses and travel will be required. Ecolab, which is headquartered in St. Paul, Minnesota, is no stranger to the travel required by this type of class and collective

action.  Ecolab has never made any objection, let alone objections based on convenience, to the

Southern District of New York as a venue in two other cases pending against it.

(Swartz Decl. ¶ 7.)  In both *Masson* and *English*, cases filed and pending in the Southern District

of New York, Ecolab never challenged the venue despite the fact that Ecolab's Institutional

division, in which the *Masson* plaintiffs worked, is based out of Minnesota, and Ecolab's Pest

Elimination division, in which the *English* plaintiffs worked, is based in North Dakota.  (*Id*.)  In

fact, lawyers for both parties in those cases have traveled to New York, California, Connecticut,

Florida, Georgia, Idaho, Illinois, Minnesota, Michigan, Nebraska, New Jersey, Ohio, Oklahoma,

Pennsylvania, Texas, and Washington in order to take or defend depositions and conduct other

types of discovery.  (Swartz Decl. ¶ 8.)  Ecolab has produced its Federal Rule of Civil Procedure

30(b)(6) witnesses in Minneapolis, Minnesota, its corporate headquarters, and New York City.

(*Id*.)

       With regard to documents, Ecolab has made no assertion that documents relevant to

nonpayment of overtime are housed in North Carolina, as opposed to Minnesota or the separate

state office localities.  Additionally, in this day of electronic discovery, Defendant has not shown

why such documents could not be produced easily anywhere, including New York.  *See Cavalo*

*Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir. 1980) (Newman, J.,

concurring) ("It will often be quicker and less expensive to transfer a witness or a document than

to transfer a lawsuit.  Jet travel and satellite communications have significantly altered the

meaning of 'non conveniens.'"); *see also S-FER Int'l, Inc. v. Paladion Partners, Ltd.*, 906

F. Supp. 211, 215 (S.D.N.Y. 1995) ("[T]ransfer . . .  would do no more than shift the burden of

transferring documents from one coast to the other.  A zero-sum exchange of burdens does not

favor a transfer.").  Ecolab does not contend that requiring the company to produce documents in

New York would impose any material burden on it, nor could it given the company's size and resources.  In fact, Ecolab electronically produced tens of thousands pages of documents in *Masson* and *English*.  (Swartz Decl. ¶ 9.)

> **b.** **The convenience of the parties does not favor North Carolina, especially because Ecolab has considerable means.**

Ecolab has also failed to show that transfer to the Middle District of North Carolina would be more convenient for the parties.  Because Ecolab is a corporation headquartered in Minnesota with at least 160 offices around the world, it is clear that no one forum will be singularly convenient for Ecolab.  And though in the context of a class and collective action, the plaintiffs come from around the country, there are already at least three Plaintiffs (Named Plaintiff John Dinisi and two Opt-in Plaintiffs) who reside in New York, where counsel for Plaintiffs and Defendant is also located.  Defense counsel, lawyers with Littler Mendelson, are perhaps the only ones for whom North Carolina could be convenient, as they have an office in Charlotte, North Carolina.  Littler Mendelson Offices, http://www.littler.com/offices/ (last visited Jan. 8, 2008).  Given the geographical breadth of the litigation and the evidence, Greensboro, North Carolina is significantly less convenient than New York City, a major transportation hub.  Indeed, the balance of interests lies so far from the Middle District of North Carolina that Ecolab's motion "smacks of venue-shopping[.]"  (Def. Mot. at 2, 17.)  Because transfer of venue to North Carolina would only serve to shift convenience to Ecolab, transfer is inappropriate and Defendant's motion should be denied.  *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1060 (S.D.N.Y. 1987) ("[T]ransfer is inappropriate when it merely serve[s] to shift convenience from one party to another.").

The Court should also deny Defendant's motion because Ecolab is of considerable means, and litigating in the Southern District of New York would not be a hardship for it.  On its

16

website, Ecolab proudly boasts:  "With over $5 billion in global sales, Ecolab is the world's

leading provider of cleaning, food safety and health protection products and services for the

hospitality, foodservice, healthcare and industrial markets."  (Swartz Decl. Ex. 9 (Ecolab

Company Profile, http://www.ecolab.com/CompanyProfile/ (last visited Jan. 15, 2008)).)  Given

its considerable means and the fact that New York City is a convenient locale because of its

many travel and hospitality options,[13] it is unsurprising that Ecolab has not objected to the

Southern District of New York as its venue for both *Masson* and *English*, and in fact, seeks to

consolidate part of this case with *Masson*.

### c.    The locus of operative facts is not in North Carolina.

The Middle District of North Carolina has almost no connection to any events relevant to

this lawsuit.  To determine the locus of operative facts, a court must look to the "site of the

events from which the claim arises."  *Oubre v. Clinical Supplies Mgmt., Inc.*, No. 05-CV-2062,

2005 U.S. Dist. LEXIS 28877, at *10 (S.D.N.Y. Nov. 17, 2005) (citation omitted).  In this case,

which involves FLSA collective claims and state class action claims spanning several states,

there is not one locus of facts, but multiple loci – Ecolab's corporate headquarters in

Minneapolis, Minnesota; the division headquarters for its Institutional division in St. Paul,

Minnesota; the division headquarters for its Pest Elimination division in Grand Forks, North

Dakota; the division headquarters for its Kay division in Greensboro, North Carolina; and other

places in which operative events took place.

---

[13]    Ecolab's argument that New York is among "the most expensive cities in the world" and,
therefore, it would be a hardship to litigate here (Def. Mot. at 13), should be taken with a large
grain of salt given the fact that it relies on Wikipedia, the self-proclaimed "free encyclopedia that
anyone can edit" for this proposition.  Wikipedia Homepage, http://en.wikipedia.org/wiki/Main_
Page (last visited Jan. 8, 2008).  Incidentally, Wikipedia also lauds New York City for its
"extensive and complex" transportation system.  Wikipedia New York City Transportation,
http://en.wikipedia.org/wiki/New_york_city#Transportation (last visited Jan. 8, 2008).

> **d.    The current forum's familiarity with the governing law and interest weigh against transfer.**

Unable to provide persuasive evidence that a transfer of venue is appropriate under the factors considered in this district, *see Saccoccio*, 2007 U.S. Dist. LEXIS 33145, at *3, Defendant also argues that the Middle District of North Carolina is better suited for this action because it is "fully competent to interpret and apply various wage and hour laws," "has a less crowded docket," and "has a stronger localized interest in [the] dispute" (Def. Mot. at 16-17).  Even putting aside the fact that the factors posited by Defendant are not germane to the Court's analysis, Defendant's arguments fail because the Southern District of New York is capable of doling justice in this dispute.  This District has been the venue for a multitude of hybrid FLSA collective and state class actions.  (*See supra* n.1.)  In fact, it is the venue that granted class certification for one of the earliest hybrid FLSA cases in a published decision that shaped the entire landscape of the law – *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001).

Moreover, the Southern District of New York has a strong interest in this dispute.  It is also the venue for *English* and *Masson*, two other nationwide collective actions against Ecolab.  In *Masson,* the Court has ruled in favor of the plaintiffs regarding their request to proceed as a collective action.  *Masson v. Ecolab, Inc*., 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 18, 2005).  In *English,* the parties have fully briefed dispositive motions on Ecolab's two affirmative defenses, the Motor Carrier Act and the retail sales exemptions. (Swartz Decl. ¶ 10.)  Judge Crotty heard argument on the motions and indicated that he intended to rule quickly.  (Swartz Decl. Ex. 4 (Transcript of Conference before Judge Crotty, dated Nov. 15, 2007, at 37:23-38:5).)

Ecolab's argument that docket conditions are more favorable in another venue egregiously "smacks of venue shopping" (*see* Def. Mot. at 2, 17 (arguing that <u>Plaintiffs</u> were venue shopping)), and is disfavored by the courts.  *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) ("Courts should be mindful that . . . defendants . . . may move for dismissal under the doctrine of *forum non conveniens* not because of genuine concern with convenience but because of . . . forum-shopping reasons."); *see also Marketing/Trademark Consultants, Inc. v. Caterpillar Inc.*, No. 98-CV-2570, 1998 U.S. Dist. LEXIS 12301, at *7 (S.D.N.Y. Aug. 10, 1998) (holding that relative docket conditions should be "afforded little weight in deciding a transfer motion").

## C.    The Creation of a New Action in North Carolina Raises Practical Concerns.

Ecolab's proposal to transfer some of the claims to North Carolina also raises important practical concerns.  First, because Ecolab only seeks to transfer part of the case, the same class and collective claims would be litigated in two states.[14]  The existence of two parallel actions in different venues not only contravenes principles of judicial economy, but also risks creating inconsistent results.  Second, Ecolab's proposal does not account for plaintiffs who did not work in the Kay division or in the divisions covered by the *Masson* and *English* lawsuits.  For example, several plaintiffs who have already opted in to this action work in the Pest Elimination, Service Solutions, and GCS Service divisions.[15]  (*See* Swartz Decl. ¶ 12.)  Under Ecolab's proposal, these Opt-In Plaintiffs' claims would presumably remain before this Court.

---

[14]    Presumably, Defendant seeks to transfer Plaintiffs Clark's and Desimone's individual *and* class claims.

[15]    A more efficient result (to which Plaintiffs would not object) would be to transfer this action, *in toto*, to Judge Crotty who presides over the *Masson* and *English* cases, if Judge Crotty would be willing to reconsider his refusal of the initial related case assignment.  This would permit Judge Crotty to coordinate pretrial discovery and facilitate possible settlement, and would avoid the possibility of inconsistent rulings.  *See Wyndham Assocs.*, 398 F.2d at 619.  Plaintiffs

**III.    ECOLAB  HAS FAILED TO PRESENT A VIABLE THEORY UNDER WHICH PLAINTIFFS COULD BE REMOVED FROM THIS CASE AND DROPPED INTO *MASSON***

In addition to improperly invoking Section 1404(a) to transfer part of the action (*see supra*), Ecolab fails to properly cite a procedural mechanism that would authorize transferring Plaintiffs Starkman and Dinisi into the *Masson* case.  Ecolab's motion should be denied on this ground as well.  *See Martens v. Thomann*, 273 F.3d 159, 172 (2d Cir. 2001) (movant must clearly state the procedural mechanism for its motion); *Alston v. New York City Transit Auth.*, 97 Civ. 1080, 1998 U.S. Dist. LEXIS 11833, at **3-4 (S.D.N.Y. Aug. 3, 1998) (denying motion because, among other reasons, plaintiff failed to cite federal rule for his motion).

Lacking a valid procedural mechanism, Ecolab instead relies on the so-called "first filed" doctrine.  (Def. Mot. 17-20.)  As Ecolab concedes in its brief, however, the first filed doctrine applies in situations in which "<u>two courts</u> have concurrent jurisdiction over an action involving the same parties and issues . . . ."  (*Id.* at 17 (emphasis added).)  In this case, "two courts" do not have concurrent jurisdiction – both cases are pending in the Southern District of New York.  Ecolab fails to cite any case in which the doctrine was applied where two Judges within the same District preside over common issues and parties.[16]  *See, e.g., Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) (The first-to-file rule "permits <u>a district court</u> to decline jurisdiction . . . when a complaint involving the same parties and issues has already been filed in <u>another district</u>" (emphasis added)); *800-Flowers, Inc. v. Intercont'l Florist, Inc.*, 860 F. Supp.

---

had requested that Judge Crotty designate this case as a related case when the complaint was filed.  (*See* Swartz Decl. ¶¶ 4, 5 and Exs. 1 and 2.)  Ecolab opposed the request because, presumably, the original Named Plaintiff did not work in the divisions at issue in *Masson* and *English*.  The Plaintiffs in the Amended Complaint and the Opt-In Plaintiffs include workers from both divisions at issue in the cases before Judge Crotty.

[16]    *Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000), is the only case Ecolab cites involving two cases filed in the same district court.  In that case, the court did not apply, or even mention, the first filed rule.

128, 131, 133 (S.D.N.Y. 1994) (applying the first filed rule where cases were filed in district courts in Florida and New York).

Although Ecolab argues that the *Clark* and *Masson* actions should be "consolidated" (Def. Mot. 19), it does not invoke the procedural mechanism authorizing consolidation, Federal Rule of Civil Procedure 42. Even if it had, however, Rule 42 would not permit Ecolab to merge Plaintiffs Starkman's and Dinisi's claims into *Masson*. Actions do not lose their separate identity because of consolidation under Rule 42. *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933) ("[C]onsolidation . . . does not merge [two] suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another."); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 130 (S.D.N.Y. 1997) (quoting *Johnson*); *see also Garber v. Randell*, 477 F.2d 711, 715-16 (2d Cir. 1973).

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD HOLD DEFENDANT'S MOTION IN ABEYANCE OR DENY IT WITHOUT PREJUDICE PENDING DISCOVERY.

If the Court is not inclined to dismiss Defendant's motion outright, Plaintiffs respectfully request that the Court hold the motion in abeyance or dismiss it without prejudice to afford the Plaintiffs an opportunity to conduct discovery into the factual claims Defendant has made in support of this motion (*see supra*), and to support their proposed class and collective definitions. *See In re Am. Cont'l Corp.*, 102 F.3d 1524, 1543 (9th Cir. 1996) ("[A] proper application of section 1404(a) often depends on information obtained through discovery, so venue transfer motions are seldom considered before discovery closes."), *rev'd on other grounds*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998); *Roberti v. Longworth*, 164 F. Supp. 2d 395, 395-96 (S.D.N.Y. 2001) (denying motion to transfer without prejudice pending pretrial discovery into the names and locations of necessary witnesses); *Controlotron Corp. v.*

21

*Perry Printing Corp.*, Civ. No. 90-356, 1990 U.S. Dist. LEXIS 7629, at **10-11 (D.N.H. June 19, 1990) (denying motion to dismiss or transfer without prejudice pending discovery); *Total Filtration Servs. v. A.T. Kearney, Inc*., No. 3:06-0624, 2006 U.S. Dist. LEXIS 90474, at **13-15 (D. Tenn. Dec. 13, 2006) (same); *CBS Broad. v. Bridgestone Multimedia Group*, 97 Civ. 6408, 1998 U.S. Dist. LEXIS 16659, at **2-3 (S.D.N.Y. 1998) (same); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (discovery is available to ascertain the facts bearing on threshold issues, including venue).

## Conclusion

For the reasons stated herein, Defendant's motion should be DENIED in its entirety or in the alternative, denied without prejudice while Plaintiffs take appropriate discovery. Plaintiffs would not oppose, however, this matter in its entirety being designated as a related case to *Masson* and *English* if this Court finds it would be appropriate and if the *Masson* and *English* court is amenable.


Dated: January 15, 2008
       New York, NY

                              Respectfully submitted,

                              **OUTTEN & GOLDEN LLP**

                              By:   /s/ Justin M. Swartz
                                    Justin M. Swartz (JS 7989)
                                    Adam T. Klein (AK 3293)
                                    Jack A. Raisner (JR 6171)
                                    Carmelyn P. Malalis (CM 3350)
                                    Rachel M. Bien (RB 6919)
                                    3 Park Avenue, 29th Floor
                                    New York, New York 10016
                                    Telephone:  (212) 245-1000

                                    **GETMAN LAW OFFICE**
                                    Dan Getman (DG 4613)

22

Michael J.D. Sweeney (MS 7959)
Matthew Dunn (MD 1103)
Tara Bernstein (TB 7733)
9 Paradies Lane
New Paltz, New York 12561
Telephone: (845) 255-9370

**Counsel to Plaintiffs and the Putative Class**