**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**GETMAN & SWEENEY, PLLC**
Dan Getman (DG 4613)
Michael J.D. Sweeney (MS 7959)
Matthew Dunn (MD 1103)
Tara Bernstein (TB 7733)
9 Paradies Lane
New Paltz, New York 12561
Telephone:  (845) 255-9370

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL CLARK, DAVID STARKMAN, FRANCO DESIMONE, and JOHN DINISI, individually and on behalf all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ECOLAB INC.,<br><br>                    Defendant. | **No. 07 Civ. 8623 (PAC)** |
| TROY MASSON, individually and on behalf all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>ECOLAB INC.,<br><br>                    Defendant. | **No. 04 Civ. 4488 (PAC)** |

JIMMY ENGLISH and WILLIAM
ZIMMERLEE, individually and on behalf all
others similarly situated,

                        Plaintiffs,

      v.

ECOLAB INC.,

                        Defendant.

**No. 06 Civ. 5672 (PAC)**

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES
## AND REIMBURSEMENT OF EXPENSES

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................................1

II.   CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF
      THE SETTLEMENT FUND..................................................................................2

      A.   THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND
           CIRCUIT FOR AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE ..3

      B.   THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE
           APPLICATION .........................................................................................6

           1.   Class Counsel's Time and Labor ..........................................................7

           2.   Magnitude and Complexity of the Litigation.........................................9

           3.   Risk of Litigation .............................................................................11

           4.   Quality of Representation ..................................................................12

           5.   Fee in Relation to the Settlement ......................................................13

           6.   Public Policy Considerations .............................................................15

III.  THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS
      COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND ...........................16

IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER
      THE SETTLEMENT AGREEMENT...................................................................17

V.    CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.H. Phillips v. Walling,*
  324 U.S. 490 (1945)................................................................................................15

*In re Allstar Inns Sec. Litig.,*
  No. 88 Civ. 9282, 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) .........14

*In re American Bank Note Holographics,*
  127 F. Supp. 2d 418 (S.D.N.Y. 2001).....................................................................4

*In re Ampicillin Antitrust Litig.,*
  526 F. Supp. 494 (D.D.C. 1981) .............................................................................14

*Ansoumana v. Gristede's Operating Corp.,*
  201 F.R.D. 81 (S.D.N.Y. 2001) .........................................................................10, 13

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
  493 F.3d 110 (2d Cir. 2007)......................................................................................5

*Banyai v. Mazur,*
  No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007)...........6

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
  450 U.S. 728 (1981)................................................................................................10

*In re Boesky Sec. Litig.,*
  888 F. Supp. 551 (S.D.N.Y. 1995)..........................................................................16

*Cohen v. Apache Corp.,*
  No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993)............14

*In re Continental Ill. Sec. Litig.,*
  962 F.2d 566 (7th Cir. 1992) ....................................................................................5

*In re Crazy Eddie Sec. Litig.,*
  824 F. Supp. 320 (E.D.N.Y. 1993) .........................................................................14

*Deposit Guar. Nat'l Bank v. Roper,*
  445 U.S. 326 (1980).............................................................................................3, 15

*Detroit v. Grinnell Corp.,*
  495 F.2d 448 (2d Cir. 1974)....................................................................................11

*Dolgow v. Anderson*,
   43 F.R.D. 472 (E.D.N.Y. 1968) ............................................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)..........................5

*Faircloth v. Certified Fin. Inc.*,
   No. 99 Civ. 3097, 2001 U.S. Dist. LEXIS 6793 (E.D. La. May 16, 2001) ............................14

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).......................................................................3, 13, 14, 15

*Gaskill v. Gordon*,
   942 F. Supp. 382 (N.D. Ill. 1996) .......................................................................14

*In re Gilat Satellite Networks, Ltd.*,
   No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007).........................13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) ...................13

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................6, 12

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................. passim

*Grace v. Ludwig,*
   46 U.S. 905 (1974)........................................................................................16

*Hicks v. Morgan Stanley & Co.,*
   01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ...................16

*In re Indep. Energy Holdings PLC*,
   2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)...............................................................13, 18

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964).......................................................................................15

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
   No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004) ..........................5

*Khait v. Whirlpool Corp.*,
   No. 06-6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) .........................3, 12, 14

*In re Lloyd's Am. Trust Fund Litig.*,
  96 Civ. 1262, 2002 U.S Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ................................16

*Maley v. Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..........................................................................4, 14, 17

*McDaniel v. County of Schenectady*,
  595 F.3d 411 (2d Cir. 2010)...............................................................................................3

*McMahon v. Olivier Cheng Catering & Events, LLC*,
  No. 08 Civ. 8713, 2010 U.S. Dist. LEXIS 18913 (S.D.N.Y. Mar. 3, 2010).........................3, 5

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993).....................................................................................18

*Mohney v. Shelly's Prime Steak*,
  No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009).....................4, 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .....................................................................................4, 17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)..........................................................................................................15

*In re Polaroid ERISA Litig.*,
  No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007).........................4, 5

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
  912 F. Supp. 97 (S.D.N.Y. 1996).........................................................................................9

*In re Ramp Corp. Sec. Litigation*,
  No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008).............................4, 5

*Rabin v. Concord Assets Group, Inc.*,
  No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273 (S.D.N.Y. Decl. 19, 1991).........................17

*Reyes v. Buddha-Bar NYC*,
  No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277 (S.D.N.Y. May 28, 2009)...............3, 12, 14

*In re RJR Nabisco, Inc. Sec. Litig.*,
  No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) .........................17

*Savoie v. Merchs. Bank*,
  166 F.3d 456, 461 n.4 (2d. Cir. 1999)..............................................................................5, 16

*Stefaniak v. HSBC Bank USA, N.A.*,
  No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872 (W.D.N.Y. June 28, 2008) .........................14

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................4

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)..................................................................4, 15

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993).................................................................................4

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)............12

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ........12

*Varljen v. H.J. Meyers & Co.*,
    No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 6, 2000) ............6

*Velez v. Majik Cleaning Serv., Inc.*,
    No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007).........4, 5, 13

*In re Vitamins Antitrust Litig.*,
    No. 99 Civ. 197, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ...............14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................3, 4, 5

*Westerfield v. Washington Mut. Bank*,
    Nos. 06-CV-2817, 08 2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 8, 2009) .......3

## I.       __INTRODUCTION__

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Settlement ("Motion for Final Approval"), which was filed on April 27, 2010 in the above-captioned action,[1] Court-appointed Class Counsel, the law firms of Outten & Golden LLP ("O&G") and Getman & Sweeney, PLLC ("Getman & Sweeney") (together, "Class Counsel"),  respectfully move this Court for an award of attorneys' fees in the amount of one-third (33 1/3%) of the Settlement Fund (the "Fund") and reimbursement of the $62,591.89 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

During the past six years of litigating these class and collective actions, Class Counsel have spent more than 7,719 attorney, paralegal, and administrative hours prosecuting this case. (Declaration of Justin M. Swartz in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses ("Swartz Decl.") ¶¶ 5, 7.)  Multiplied by each individual's hourly rate, this results in a lodestar amount of approximately $2,268,571.  (Swartz Decl. ¶ 8.)  Class Counsel's request for one-third of the Fund is approximately 0.88 times "lodestar."  (*Id.*)  Courts routinely award counsel two to three times lodestar in class action settlements.  (*Id.*)

Class Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.  (Swartz Decl. ¶¶ 11-12.)  For the reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and

---

[1]     For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Justin M. Swartz.

expense reimbursements are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

**I.**     **CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF ONE-THIRD OF THE SETTLEMENT FUND**

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the Class.  The fee they seek by this motion is less than the amount of work they put into the case.

The Settlement Agreement, which has been preliminarily approved by the Court, allows Class Counsel to seek "no more than 35% of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses to be paid from the [Fund]."  (Ex. E[2] (Settlement Agreement) ¶ 5.2(A).)  In addition, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Rule 23 Notice"), the Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("FLSA Notice"), and the Notice of Proposed Settlement of Class Action and Collective Action Lawsuits and Fairness Hearing ("Rule 23 and FLSA Notice") (collectively with Rule 23 Notice and FLSA Notice, the "Notices") that were sent to all Class Members stated the following:

> Class Counsel will apply to the Court for attorneys' fees in the amount of 35% of the Settlement Fund for the service they have provided in the Litigation . . . . Class Counsel will also apply for an amount not to exceed $80,000 to reimburse Class Counsel for actual out-of-pocket expenses incurred in the Litigation.

(Ex. F (Notices) ¶ 16.)

Class Counsel requests only one-third (33 1/3%) of the Fund plus expenses, which is reasonable and well within the range approved by courts in similar cases.

---

[2]       All exhibits are attached to the Swartz Decl.

A. **THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND CIRCUIT FOR AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE.**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Where relatively small claims can only be prosecuted through aggregate litigation and the law relies on prosecution by "private attorneys general," *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980), attorneys who fill the private attorney general role must be adequately compensated for their efforts.  *McMahon v. Olivier Cheng Catering & Events, LLC*, 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *19-20 (S.D.N.Y. Mar. 3, 2010); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *22-23 (E.D.N.Y. Jan. 20, 2010).  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Although there are two ways to compensate attorneys for successful prosecution of statutory claims – the lodestar method and the percentage of the fund method, *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) – the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one.  *Id.*; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."); *McMahon*, 2010 U.S. Dist. LEXIS 18913, at *6; *Khait*, 2010 U.S. Dist. LEXIS 4067, at *22 (following the "trend" and awarding 33% of the fund); *Westerfield v. Wash. Mut. Bank*, Nos. 06-CV-2817, 08 Civ. 00287, 2009 U.S. Dist. LEXIS 94544, at *13-14 (E.D.N.Y. Oct. 8, 2009) (adopting the percentage of the fund method); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *11-12 (S.D.N.Y. May 28, 2009)

(same); *Mohney v. Shelly's Prime Steak*, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).[3]

There are several reasons that courts prefer the percentage method.  First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made.  *Wal-Mart Stores*, 396 F.3d at 122; *Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213, at *8 (S.D.N.Y. Jan. 4, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432

---

[3]     A majority of courts in other circuits have also approved and favored the percentage method in common fund cases.  *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.").

(S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992)).  This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, where the Court held that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay.  493 F.3d 110, 111-12 (2d Cir. 2007).  While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method.  *McMahon*, 2010 U.S. Dist. LEXIS 18913, at \*21.

Second, the percentage of the fund method promotes early resolution.  It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation."  *Wal-Mart Stores*, 396 F.3d at 122; *see also In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at \*8; *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at \*6; *Velez*, 2007 U.S. Dist. LEXIS 46223, at \*24.  The percentage method discourages plaintiffs' lawyers from running up their billable hours, one of the most significant downsides of the lodestar method.  *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429, at \*32 (S.D.N.Y. Oct. 26, 2004).

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions."  *Id.* (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49; *see also In re Ramp Corp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 213, at \*8 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S.

Dist. LEXIS 57918, at *48-49 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *11 (S.D.N.Y. Mar. 30, 2007).  While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously.  *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check); *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205, at *15 (S.D.N.Y. Nov. 6, 2000) (using an "unexamined lodestar figure" for the lodestar cross check).

### B.   THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION.

Reasonableness is the touchstone for determining attorneys' fees.  In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

> (1)   the time and labor expended by counsel;
>
> (2)   the magnitude and complexities of the litigation;
>
> (3)   the risk of litigation;
>
> (4)   the quality of representation;
>
> (5)   the requested fee in relation to the settlement; and
>
> (6)   public policy considerations.

209 F.3d at 50 (quotations omitted).  All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

1. **Class Counsel's Time and Labor**

Over the course of six years, Class Counsel expended substantial time and effort to achieve the $6 million dollar settlement on behalf of the Class.  The Litigation consists of three separate federal lawsuits, each of which was actively litigated and involved extensive briefing.

Class Counsel expended significant time and effort investigating and researching the merits of Class Members' claims.  (Swartz Decl. ¶ 26.)  Class Counsel interviewed hundreds of service workers (including RSMs, Pest Service Specialists, Institutional Division Territory Managers, and TRs) to determine the hours that they worked, the wages they were paid, their job duties, and other information relevant to their claims.  (*Id.* ¶ 27.)  Class Counsel also obtained declarations from and held meetings with putative class members.  (*Id.*)

The parties also undertook multiple depositions.  (*Id.* ¶ 28.)  Class Counsel took 5 depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) and defended 25 depositions of service workers who filed consent-to-join forms ("Opt-In Plaintiffs").  (*Id.*)

Class Counsel also obtained, reviewed, and analyzed thousands of pages of hard-copy documents and electronically-stored data including, but not limited to, time and payroll records, human resources data, financial records, sales data, marketing material, and employee lists.  (*Id.* ¶ 29.)  The parties engaged in numerous discovery disputes which required court intervention.  (Swartz Decl. ¶ 30.)  Ecolab served discovery requests and interrogatories on Plaintiffs, and in response Plaintiffs produced documents including, but not limited to, W-2s, earning statements, pay stubs, and payroll forms, and prepared interrogatory responses for 117 *Masson* plaintiffs.  (*Id.* ¶ 31.)

In the *Masson* Case, Plaintiffs successfully moved for approval of collective action notice and defeated Ecolab's motion for summary judgment.  (Swartz Decl. ¶¶ 15, 17.)  In the *English*

Case, Plaintiffs moved for approval of collective action notice, for summary judgment, and opposed Ecolab's summary judgment motion.  (*Id*. ¶ 21.)   After Ecolab prevailed on its summary judgment motion, Plaintiffs appealed the judgment to the Court of Appeals for the Second Circuit and fully briefed the appeal before agreeing to a stay pending settlement discussions.  (*Id*. ¶ 22.)   In the *Clark* Case, Plaintiffs successfully opposed Ecolab's motion to transfer venue.  (Swartz Decl. ¶¶ 23-24.)

Over the course of approximately six years of litigation, the parties engaged in informal settlement negotiations several times.  (Swartz Decl. ¶ 32.)  In or around March 2009, the parties agreed to attempt to resolve this matter through non-binding private mediation.  (*Id*.)  Class Counsel prepared for mediation and attended two days mediation on April 20 and 21, 2009.  (*Id*. ¶¶ 32-33.)  Although the parties did not settle the Litigation at the mediation, they made progress toward a resolution of the Litigation and agreed to continue to talk, to exchange information, and to keep the mediator involved.  (*Id*. ¶ 33.)  After several months of continued negotiation between the parties, on or around September 2, 2009, the parties agreed on a settlement amount and several other key terms.  (Swartz Decl. ¶ 34.)  During the next several weeks, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Stipulation of Settlement and Release ("Settlement Agreement").  (*Id*.)

On November 11, 2009, Plaintiffs filed their Motion for Preliminary Approval of Settlement in which they requested, among other relief, that the Court grant preliminary approval of the Settlement Agreement and conditionally certify the settlement class.  (Swartz Decl. ¶ 35.)  On November 17, 2009, the Court granted Plaintiffs' Motion for Preliminary Approval.  (*Id*. ¶ 36.)

In performing these tasks, Class Counsel expended more than 7,719 hours of attorney, paralegal, and support staff time, for an aggregate lodestar of $2,268,571.  (Swartz Decl. ¶¶ 5, 7-8.)  These hours are reasonable for a prolonged litigation involving several different actions, and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  (Swartz Decl. ¶ 9.)  Class Counsel used a small team of attorneys and staff at any one time in order to minimize duplication of efforts and maximize billing judgment.  (*Id.* ¶ 6.)  Class Counsel made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform the work effectively.  (*Id.*)

Moreover, the requested fee is not based solely on time and effort already expended, rather, it is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the settlement in the future.  (Swartz Decl. ¶ 10.)  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.  (*Id.*)  For example, many Class Members have had questions regarding the settlement.  (*Id.*)  Since the Notices were sent to Class Members, Class Counsel and staff have expended dozens of hours responding to questions about the case and will continue to do so as the settlement administration continues.  (*Id.*)

## 2. <u>Magnitude and Complexity of the Litigation</u>

The sheer magnitude of this Litigation, its wide geographic scope, and the complexity of the factual and legal questions involved further support the reasonableness of the requested fee award.  Under the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996).

Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . .  These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as ("opt out") class actions pursuant to Federal Rule of Civil Procedure 23, in the same action as the FLSA collective action ("opt in") mechanism pursuant to 29 U.S.C. § 216(b).  Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency.  *See Ansoumana v. Gristede's Operating Corp*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).  However, hybrid cases require complex questions of law, especially if the wage and hour laws of multiple states are at issue.

Here, the Litigation encompassed three separate actions, including one hybrid action, on behalf of Class Members who were employed in four different job categories and were located throughout the country.  Accordingly, the Litigation raised numerous, difficult legal issues.  Ecolab raised affirmative defenses to Plaintiffs' claims in each lawsuit, arguing that the FLSA's overtime requirements did not apply to Class Members because they were exempt pursuant to four different exemptions.  (Swartz Decl. ¶ 13.)

Disputed questions of fact also loomed large in the Litigation.  Class Counsel conducted a time-consuming and extensive investigation into the job duties of and hours worked by RSMs, Pest Service Specialists, Institutional Division Territory Managers, and TRs.  (Swartz Decl. ¶ 27.)  Given the sheer magnitude of the Litigation, the interplay of the wage and hour laws of four

different states, and the complexity and number of legal and factual questions in the case, the second *Goldberger* factor strongly supports approving Class Counsel's attorneys' fee request.

### 3.   Risk of Litigation

The risk of litigation is also an important factor in determining a fee award.  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974).  "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. (Swartz Decl. ¶ 11.)  Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming.  (*Id.*)  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  (*Id.*)  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  (*Id.*)  Class Counsel stood to gain nothing in the event the case was unsuccessful.  (*Id.*)  To date, Class Counsel have worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  (Swartz Decl. ¶ 12.)

Moreover, the facts and circumstances of this case presented numerous hurdles to a successful recovery.  (*Id.* ¶ 13.)  Ecolab raised four different exemption defenses to the claims and prevailed on one of them.  (*Id.*)  Plaintiffs also faced substantial risk that they would not recover any damages for RSMs after July 1, 2008, when Ecolab changed their compensation to correspond with the Court's decision in *English*.  (*Id.*)  Despite these risks, Class Counsel

secured a substantial settlement.  Accordingly, the risk of litigation weighs in favor of Class Counsel's request for attorneys' fees.

          4.      **Quality of Representation**

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467).

The $6 million settlement amount represents a good value given the attendant risks of litigation and the fact that Defendants prevailed on their retail or service establishment exemption defense in *English*, even though the recovery could be greater if Plaintiffs ultimately prevailed on the *English* Appeal, succeeded on all claims at trial, and survived any subsequent appeal.  The resulting average per-class member settlement amount is a significant amount – approximately $11,560 before fees and costs are deducted.  The settlement also provides recovery to Class Members without the uncertainty and delay of trial.

Class Counsel's experience also weighs in favor of approving their requested fees.  O&G has substantial experience prosecuting large-scale wage and hour actions such as this Litigation. *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067, at *21 (E.D.N.Y. Jan. 20, 2010) (noting that O&G has "substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *7 ("[O&G] 'has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area.'"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039,

at *49 (S.D.N.Y. Sept. 29, 2006) ("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour] litigation.") (internal quotations omitted); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (O&G is "experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation").  Getman & Sweeney also has substantial experience prosecuting large-scale wage and hour actions.  (Swartz Decl. Exs. C & D.)

Class Counsel's skill and experience directly brought about the favorable settlement on behalf of Class Members and weighs in favor of granting the requested fees.  (Swartz Decl. ¶ 4.) *See Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 31% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.     Fee in Relation to the Settlement

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall."  *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964, at *52 n.41 (E.D.N.Y. Sept. 18, 2007).  "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement."  *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. Sept. 26, 2003)) (internal quotation marks omitted).

Class Counsel's one-third (33 1/3%) fee request is "consistent with the norms of class litigation in this circuit."  *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (granting one-third of the settlement fund).

Courts in this Circuit routinely grant requests of one-third of substantial settlement funds that are similar in size to the $6 million fund here. *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *4, 23-25 (granting O&G 33% of $9,250,000 fund in FLSA and multistate wage and hour law case); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *2-3, 11 (awarding 33% of $710,000 fund in FLSA and NYLL tip misappropriation case); *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13, 16-17 (awarding 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding 33% of $2.9 million fund in FLSA and NYLL case); *see also Maley*, 186 F. Supp. 2d at 370 (awarding 33 1/3% fee on fund valued at $11.5 million in securities class action); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund in securities class action).

Courts in this Circuit have also granted fee requests in excess of thirty-three percent of the fund, *see, e.g.*, *Frank*, 228 F.R.D. at 189 (awarding attorneys' fees of 38% of the fund in FLSA and NYLL case); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding attorneys' fees of 34% of the fund in securities class action); *In re Allstar Inns Sec. Litig.*, No. 88 Civ. 9282, 1991 U.S. Dist. LEXIS 20402 (S.D.N.Y. Nov. 20, 1991) (awarding attorneys' fees of 35% of the fund in securities class action); as have courts outside this Circuit, *see, e.g.*, *In re Vitamins Antitrust Litig.*, No. 99 Civ. 197, 2001 U.S. Dist. LEXIS 25067, at *10 (D.D.C. July 16, 2001) (awarding attorneys' fees of 34% of the fund in antitrust case); *Faircloth v. Certified Fin. Inc.*, No. 99 Civ. 3097, 2001 U.S. Dist. LEXIS 6793, at *37 (E.D. La. May 16, 2001) (awarding attorneys' fees of 35% of the fund in class action case challenging loan practices); *Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996) (awarding 38% of the fund in securities fraud class action), *aff'd*, 160 F.3d 361 (7th Cir. 1998); *In re Ampicillin*

*Antitrust Litig.*, 526 F. Supp. 494, 500 (D.D.C. 1981) (awarding attorneys' fees of 45% of the fund in antitrust case).  Nonetheless, here Class Counsel seek attorneys' fees of only one-third of the Fund.

### 6.     Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In awarding attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The Fair Labor Standards Act and state wage and hour laws are remedial statutes designed to protect workers.  *See A.H. Phillips v. Walling,* 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective – ensuring that every employee receives "a fair day's pay for a fair day's work").   Fair compensation for attorneys who take on such litigation furthers the remedial purpose of the statutes.

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature.  *See Roper*, 445 U.S. at 338-39; *see also Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970).  Class actions are also an invaluable safeguard of public rights.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964).  Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  *Frank*, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take

on . . . small-scale class actions[.]" *Id.* Courts, therefore, look with favor upon awarding

attorney fees in class actions that "encourage the vigilance of private attorneys general to provide

corporate therapy protecting the public investor who might otherwise be victimized." *Grace v.*

*Ludwig,* 484 F.2d 1262, 1267 (2d Cir. 1973), *cert denied,* 416 U.S. 905, 94 S. Ct. 1610 (1974).

   In this case, public policy considerations weigh heavily in favor of awarding Class

Counsel's requested fee.  The violations complained of are of long-standing duration.

Nevertheless, apparently no state or federal governmental action has ever been brought against

Defendants to correct these deficiencies.  The award of the requested fees will encourage the

prosecution of similar claims and further a significant public interest goal.

## III.   THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF ONE-THIRD OF THE SETTLEMENT FUND.

   Following *Goldberger*, courts usually apply the percentage method and loosely use the

lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.  The Second

Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the

reasonableness of the requested percentage." *Id.*  As part of the cross check, the lodestar is

determined by multiplying the hours reasonably expended on the case by a reasonable hourly

rate.  *See Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890,

at *27 (S.D.N.Y. Oct. 19, 2005).  Courts then consider whether a multiplier is warranted based

on factors such as (1) the contingent nature of the expected compensation for services rendered;

(2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of

representation; and (4) the results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562

(S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

   Courts regularly award lodestar multipliers from 2 to 6 times lodestar.  *See, e.g., In re*

*Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at *78-81

(S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 489 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.,* No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273, at *3-4 (S.D.N.Y. Decl. 19, 1991) (awarding multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6). Here, Class Counsel does not seek a multiplier at all. They seek 0.88 of their lodestar. (Swartz Decl. ¶ 8.)

In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Id.* Class Counsel spent more than 7,719 hours over the course of six years to litigate and settle this matter. (Swartz Decl. ¶¶ 5, 7.) The time spent by Class Counsel is described in the accompanying Declaration of Justin M. Swartz and Class Counsel's contemporaneous time records attached thereto. (Swartz Decl. ¶¶ 5, 7-9 & Exs. A & B (Time Records).) The hours worked by Class Counsel result in a lodestar of $2,268,571. (Swartz Decl. ¶ 8.) If the Court grants this motion, Class Counsel will recover approximately 0.88 times their lodestar fees. (*Id.*)

## IV.   CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT.

Class Counsel request their actual litigation expenses in the amount of $62,591.89 to be paid from the Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp.

235, 239 (S.D.N.Y. 1993)).  Here, Class Counsel's un-reimbursed expenses were incidental and

necessary to the representation of the Class.  (Swartz Decl. ¶¶ 5, 7.)  They include costs for

postage, travel and transportation, working meals, photocopies, legal research, one-half of the

mediator's fees, court fees, court reporters, and other expenses.  (Swartz Decl. ¶¶ 5, 7.)  The

Class Notice allows Class Counsel to "apply for an amount not to exceed $80,000 to reimburse

Class Counsel for actual out-of-pocket costs incurred in the Litigation."  (Swartz Decl. Ex. F

(Notices).)  Class Counsel request less than that amount.

**V.**     **CONCLUSION**

For the reasons set forth above, Class Counsel respectfully request that the Court grant

Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses,

and enter an Order: (i) awarding attorneys' fees in the amount of one-third (33 1/3%) of the

Fund; and (ii) reimbursing $62,591.89 in out-of-pocket expenses that Class Counsel incurred in

successfully prosecuting the claims in this action.

Dated:  April 27, 2010
        New York, New York

Respectfully submitted,
**OUTTEN & GOLDEN LLP**
By:

  /s/ Justin M. Swartz
Justin M. Swartz (JS 7989)

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Rachel M. Bien (RB 6919)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

**GETMAN & SWEENEY, PLLC**
Dan Getman (DG 4613)
Michael J.D. Sweeney (MS 7959)

Matthew Dunn (MD 1103)
Tara Bernstein (TB 7733)
9 Paradies Lane
New Paltz, New York 12561
Telephone: (845) 255-9370

**Attorneys for Plaintiffs and the Class**